353 So.2d 322 (1977)
STATE of Louisiana Through the DEPARTMENT OF HIGHWAYS
v.
J. Walter SMITH.
No. 11582.
Court of Appeal of Louisiana, First Circuit.
November 21, 1977.
Rehearing Denied December 28, 1977.
Writ Granted February 10, 1978.
*323 Johnie E. Branch, Jr., Bryan Miller, Baton Rouge, for plaintiff Louisiana Dept. of Highways.
Joseph H. Simpson, Amite, for defendant J. Walter Smith.
Before LANDRY, SARTAIN and ELLIS, JJ.
ELLIS, Judge.
This is an expropriation case in which the State of Louisiana, through the Department of Highways, has taken 17.518 acres in full ownership, and drainage servitudes totalling 1.214 acres from an 85.682 acre tract of land belonging to J. Walter Smith. At the time of the taking, on May 17, 1965, the State deposited the sum of $3,125.00 as compensation, including $2,843.00 for the parcel taken and $282.00 as severance damages.
The original tract lies in the South half of the Southwest Quarter and the Northeast Quarter of the Southwest Quarter of Section 35, Township 6 South, Range 5 East, in Livingston Parish. Along the southerly portion of its East line it fronted on the Tickfaw River, some five miles above the head of navigation. The parcel expropriated was taken for the right of way of Interstate Highway 12, a limited access highway, and runs across defendant's property in an East-West direction, leaving a remainder to its North of 65.16 acres, and a remainder to the South of 1.79 acres.
Several hundred feet to the east of the subject property, on property of other owners which was appropriated for the purpose, the Tickfaw River was diverted, so that its main channel no longer flows past defendant's property, which now fronts on a slough through which water flows only when the river is high.
In his answer, defendant alleged that the property taken was worth $500.00 per acre, and that he suffered severance damages of $1,000.00 per acre for the South remainder, $100.00 per acre for the North remainder, *324 and $10,000.00 because of the diversion of the Tickfaw River.
After trial on the merits, judgment was rendered, awarding $10,772.84 over and above the amount deposited. From that judgment, the Department has appealed, asking that it be reduced to a gross amount of $3,441.00. Defendant has answered the appeal asking that the award be increased.
In this court there is a contest as to the value of the part taken, severance damages to the South remainder, and damages resulting from the diversion of the channel of the Tickfaw River. Only two expert witnesses testified, one on each side: Edward J. Deano for the Department and James E. Carpenter for the defendant.
Both experts agreed that defendant was entitled to be compensated 100% for the drainage servitudes, so that a total of 18.732 acres was involved in the taking. Mr. Deano arrived at a per acre value of $175.00 and Mr. Carpenter found a value of $569.00. Mr. Deano used five comparable sales for his estimate, dated from three to six years earlier than the taking, from six to 12 miles distant from the parcel taken, and ranging in size from 38.82 to 80.96 acres. These gave per acre values of from $121.00 to $366.00 per acre. Mr. Deano made no adjustments for time or size, on the ground that all of his comparables had road frontage and the subject property had no road access. He did not think that the frontage on the Tickfaw River gave any added value to the property. In addition to the $175.00 per acre value, Mr. Deano found severance damages of $156.00 to the South remainder, which he thought contained 1.46 acres rather than 1.79 acres.
In evaluating his testimony, the trial court said:
"The Highway Department used appraiser Deano, who gave three comparables in Livingston Parish. The Court does not feel that comparables in Tangipahoa Parish, some 12 miles to the east, are comparables. Of the three comparables, one was suspect on its face because the vendor had bought from the vendee's relatives and the Highway Department admitted that they had not looked into this transaction to see if it were an arm's length transaction or not. The third comparable used by the Highway Department was 117.42 acres at $124.00 per acre, and during a recess, it was discovered that, actually, this was a wrong amount of acreage and that, actually, the land had sold for $300.00 per acre. Therefore, the comparables of the Highway Department should have been $366.00 and $300.00 per acre, which are a far cry from the amount allowed.
"In view of the fact that the expert for the Highway Department comparables was so out of line, the Court is entitled to disregard his testimony completely. Further examples of the Highway Department's appraiser's mistakes were that he thought that the land was inaccessible yet a map was introduced showing that there had been a road there for many years, maintained by the police jury, and the Highway Department should have taken this into consideration."
We find no manifest error in this determination by the trial judge.
Mr. Carpenter used only two comparable sales. One of these was of a 7.18 acre tract about a mile and a half from the subject property, which sold for $488.00 per acre in March, 1964. He adjusted this sale up $50.00 an acre for time, down $100.00 an acre for size and up $100.00 per acre for location, because of the river. This gives an indicated value of $538.00 per acre. Mr. Carpenter's other comparable was a one acre tract fronting on the Tickfaw River, which defendant had sold from the Southeast corner of the original tract a few months before the taking, for $800.00. The trial judge accepted his estimate of $569.00 per acre, based on these two comparable sales. Since all of Mr. Carpenter's testimony came in without objection, we find that it expanded the pleadings to allow for an award greater than the $500.00 per acre demanded therein.
Although we do not find Mr. Carpenter's testimony any more logical or soundly *325 based than that of Mr. Deano, we are unable to say that there is manifest error in accepting Mr. Carpenter's testimony in this respect.
However, for reasons which are not clear and despite his adoption of Mr. Carpenter's opinions, the trial judge awarded $800.00 per acre for ten acres of the property taken, and $569.00 per acre for the remainder. This conclusion is not sustained by the record and is, therefore, manifestly erroneous. The proper award for the taking of the right of way and the drainage servitudes should have been for 18.732 acres at $569.00 per acre, or $10,658.51.
With respect to severance damages to the South remainder, Mr. Deano estimated an award of $156.00. As pointed out above, he was of the impression that there were 1.46 acres rather than 1.79 acres as shown by the map on file in the record. It is not clear how Mr. Deano arrived at this figure, but it appears to be approximately 60% of the value of 1.46 acres at $175.00 per acre.
Mr. Carpenter felt that the South remainder, which forms a long triangle, which is about 85 feet wide and about 2,000 feet long, and divided into two pieces by one of the drainage servitudes, was of no value to Mr. Smith, and gave severance damages of 100% of 1.79 acres at $569.00 per acre. The trial judge awarded 100% of 1.46 acres at $569.00 per acre.
In view of the shape of the parcel, its small size, and the fact that it is completely isolated by the taking, we cannot find manifest error in giving 100% of its value as severance damages. However, the award should have been made for the full acreage of the remainder, 1.79 acres at $569.00 per acre or $1,018.51.
With respect to the damages suffered by the North remainder, a different question is presented. It is conceded that no severance damages resulted from the taking of the 17.518 acres and the drainage servitudes. However, it is contended that the property fronting on the Tickfaw River was damaged by the diversion of the main channel thereof. We think the record sustains a finding that the property fronting on the river had a value of $800.00 per acre, and that ten one acre sites could have been located along the river. We think the record also supports the conclusion that, by virtue of the diversion of the river channel, these sites are no longer of any value as camp sites and have the same value as the remainder of the property.
It is also clear that the damages sought do not arise from the taking in this case, but as the result of the taking on the adjacent property, and the location of the main channel of the Tickfaw River thereon.
Considering the foregoing, we are of the opinion that whatever damages may have been suffered as a result of the relocation of the Tickfaw River are not recoverable in this case. We recognize that damages may be recovered in an appropriate proceeding when property is damaged for public purposes, even when there is no expropriation of a portion thereof. Article I, § 2, Constitution of 1921. However, it is also settled that "in an expropriation suit, the issue must be confined to ascertaining the market value of the property and the damage growing out of the expropriation, at the date when suit was filed, and to nothing else." Louisiana Highway Commission v. De Bouchel, 174 La. 968, 142 So. 142 (1932). Since the loss in value arising from the diversion of the Tickfaw River did not result from the expropriation, it cannot be recovered in this suit.
The judgment appealed from is therefore amended to make the amount thereof $11,677.02, subject to a credit for the amount deposited of $3,125.00, or $8,552.02, together with legal interest at the rate of 5% per annum from the date of the taking until paid. The Department shall pay all costs for which it may be liable under the law.
AMENDED AND AFFIRMED.