400 So.2d 241 (1981)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
Henry L. LANDECHE, Jr., et al.
No. 11897.
Court of Appeal of Louisiana, Fourth Circuit.
May 5, 1981.
Rehearing Denied July 13, 1981.
*242 William W. Irwin, Jr., Johnie E. Branch, Jr., Robert L. Ledoux, Bryan Miller, James C. Russell, Jr., Baton Rouge, for plaintiff-appellant.
Abbott J. Reeves, Gretna, Leon C. Vial, III, Hahnville, for Henry L. Landeche, Jr., defendant-appellee.
Becnel & Gravois, Larry C. Becnel and Jude G. Gravois, Vacherie, for James M. Gravois, defendant-appellant.
Before BOUTALL, CHEHARDY and STOULIG, JJ.
CHEHARDY, Judge.
Plaintiff, State of Louisiana, through the Department of Highways, and defendant James M. Gravois appeal a district court decision awarding Gravois $50,000 and defendants Henry L. Landeche, Jr., et al., $723,350 for damages sustained as a result of an expropriation of property owned by the Landeche family and leased by Gravois. The district court also awarded expert witness fees in the amounts of $350 each, and additionally awarded experts S. J. McClendon and David Black the sum of $2,500 each for preparation of their testimony.
The Department of Highways brought this suit, claiming 34.373 acres of land belonging to the Landeche family and leased by Gravois for the purpose of farming sugar cane, in order to construct State Route La. 3127, part of the State Highway System, and designed as a Donaldsonville-New Orleans Highway. The project provided for construction beginning approximately 2.5 miles east of the St. John the Baptist Parish line and extending to a junction with State Route La-US 90, 0.7 of a mile southwest of Boutte, a distance of 9.044 miles; and the Killona Access Road beginning at Highway Survey Station 111 + 19.01 and extending northerly to a junction with State Route La 18 at Killona, a distance of 1.255 miles; and Access A Road beginning at Highway Survey Station 252 + 59.02 and extending northwesterly through the grade crossing of the Texas and Pacific Railroad, a distance of 0.702 of a mile; and the connection to State Route La-US 90, a distance of 0.649 of a mile, a total distance of 11.650 miles. The parties were unable to agree as to what constituted just compensation, and the matter was submitted to the trial court.
Peter J. Talluto, a real estate appraiser, explained that the taking provided a 300 foot wide right of way running in an east to west direction in the approximate mid-area of the Landeche property, and also an access road, varying in width from 80 to 90 feet.
Talluto said that there were no damages to the remainder of the Landeche property north or south of the main highway taking because the highest and best use of it was for industrial purposes. He added that the access road caused no damage because that which remained east of it had a higher use, possibly as a residential development or some other activity related to the industrial tract.
Talluto estimated, based on comparable sales in the area, that the value of the land actually taken at the time of taking was $1,500 per acre; and his estimate of just *243 compensation for the 34.373 acres taken was $51,551.50 for the property and $1,555.50 for the sugar cane crop.
He also said that as a result of the highway intervention, special benefits in the amount of $120,000 accrued to the owners of the property taken, due to the fact that some of the property had increased in value from $1,500 to $3,000 an acre. As far as the operation of the property as a sugar cane plantation, Talluto said that, since the highest and best use of the property is industrial, that agricultural use of the property must be considered a business endeavor and not significant to the value of the land.
It was stipulated by counsel that if Joseph Billa were to appear, his testimony would be essentially the same as that of Talluto, with the exception that he would place the value per acre of the land taken at $1,600.
David E. Black, accepted by the court as an expert in the field of sugar cane appraisal, said that there was $1,232 worth of sugar cane on the property taken, as of the date of the taking, and that of that amount only $27.50 worth of it was actually destroyed, the remainder harvested by the lessee. Due to the fact that there was a gravel road through the field which was part of the taking, he estimated the cost of building a new road, for access to the loading rack, would be $5,000.
S. J. McClendon, also a real estate appraiser, said that at the time of the taking he determined that the property was in a "holding" or "transitional" state, although it would eventually end up as industrial property. He estimated that the entire tract of land held by the Landeche interests, approximately 1,315 acres, was valued at $2,748,350 before the taking for the highway, and $2,025,000 after the taking, a difference of $723,350.
McClendon explained he estimated the 315 acres of uncultivated land of the whole Landeche tract to be valued at $700 an acre and the usable land, based on comparables, to be worth $2,527 an acre. Of the land actually taken he estimated that the value of the 34.37 acres taken by the Highway Department was $87,038.
McClendon also testified that the taking resulted in damages by dividing the remaining Landeche property into three different fields, necessitating the inconvenience of crossing the highway and increased costs to work them; drainage problems caused by the highway ditches and rendering the east side of the access road not economically possible to grow sugar cane on; and also necessitating the building of a new farm road on which to move the agricultural equipment, due to the fact that the access road was too dangerous for that purpose. He estimated the cost of constructing another road to be $70,000 and "from his own experience" estimated the cost of constructing a crossing of the Texas and Pacific Railroad right of way to be $18,157.
On cross-examination, when McClendon was asked to itemize the value of the part taken and his estimate of damages so that they totaled $723,350, he said he did not total them; however, he said that figure included the part of land that was taken, plus damages. Also, when asked if he had any itemization per acre for this amount of damage, he said he "did not really put a dollar value on it" but that he was considering the inconvenience of crossing the highway, the vehicles coming under police power, and the loss of the use of some 50 acres of land to which there was no good access.
Defendant Henry L. Landeche, Jr., testified that after the taking there was no way to continue farming operations on his property, that he would have had to build two new farm roads and new sheds on one side of the highway, and it would have been impractical to cross the highway as many as two or three hundred times a day, as required in the harvest season. He also said the remaining property was eventually sold by the Landeche interests for $2,025,000 plus relocation expenses for the three houses that family members were living in.
Defendant James Gravois testified that he had a five-year lease (with a five-year option) with the Landeche interests to farm sugar cane on 782 acres of the property and *244 550 acres of that was actually planted in cane at the time of the taking. His lease began in 1966 and he exercised his option in 1970, shortly before the June 1971 taking.
Gravois said that as a result of the taking he was unable to farm 100 of his leased acres he previously utilized under the lease. It was also established that all of the 34.37 acres of land actually expropriated were leased by him (18.4 acres of which were actually planted with cane); and it was stipulated by both counsel that his damages for cane taken would be $7,500 if it was decided by the court that he had a right to compensation for this cane, or any amount of it proportionally taken. Gravois also testified that a total of $20,000 damages in increased expenses accrued to him in the years 1972, 1973, 1974 and 1975, as a result of the taking, due to increased hauling expenses, drainage problems and losses, although he said no damages accrued to him in 1971.
In his written reasons for judgment, the district court judge said:
"Plaintiff's case depends on the testimony of Mr. P. J. Talluto, an expert in the field of real-estate values and Mr. David Black, an expert in the field of sugar cane field values. Mr. Talluto was a most candid witness whose testimony relates that his client (the State) underestimated defendants' value by some $9,000.00 The weakness in Talluto's opinion is that each part of the 34.373 acres taken is of equal value1, an opinion that this Court does not share due to the logical conclusion that if land is to be used in this area for any purpose, it must be drained, further that land used traditionally for a sugar cane crop differs from any other crop in that it is not seeded each year, but rather on a four-year cycle.
1 $1,500.00 an average acre, according to Talluto.
"Defendants' expert, Mr. S. J. McClendon, is given the greatest weight by this Court as being the most logical and practical of the appraisers. Mr. McClendon admitted that as much as 20% of the land in question was not usable for any purpose, a common finding in land such as that made the subject of this lawsuit. His evaluation was of the entire tract and its sale value to the Defendant at the time of the taking, which reduced to math, is as follows:

Value Before the Taking $ 2,748,350.00
Value After the Taking -2,025,000.00
 ______________
Opinion of Damages $ 723,350.00

"As reflected by the Judgment, this Court feels the above estimate is excessive, however, the rational and candid testimony of McClendon is given great weight.
"A close examination of the record wherein Mr. McClendon lists through Defendants' answer to the State's Interrogatories supports his opinion of the value of the property owned by the Landeche Interests, namely:

(a) H. L. Chaisson, vendor, Boutte
 Estates, Inc., vendee, March
 1970, COB 98, Folio 134 (erroneously
 cited as Folio 193 by
 counsel) $23,502.001
(b) Mary Lussan, vendor, Luling
 Estates, vendee, April 1971,
 COB 110, Folio 658 (erroneously
 cited as COB 150, Folio 646
 by counsel) $ 9,793.002
(c) C. L. Perillous, vendor, Shell
 Oil, vendee, September, 1972,
 COB 132, Folio 82 $275,000.003
1 Approximately three acres
2 Approximately 1.25 acres
3 Approximately 40 acres

"Mr. McClendon also recognized that not all the land taken was of equal value and in reaching his opinion, he appraised some acreage as low as $700.00 an acre.
"In the opinion of the Court, the average value of each acre taken by a preponderance of the evidence as market value at the time of taking was $2,250.00 per acre × 34.373 acres = $77,339.25; cost of replacing plantation road $5,000.00; damages for replacement of Railroad Crossing, 0 (not proven); severance damages to remaining tract of land owned by Defendants (288.644 minus 34.373 = 254.27) *245 at $700.00 per acre or $177,985.00. To recapitulate:

Value of Land taken by
 Expropriation $ 77,339.25
Road Replacement 5,000.00
Severance damages 177,985.00
 ___________
Total Award, Landeche Interests $260,324.25

"There is no award included above for diminution of crop yield caused by impairment of drainage, this Court being of the opinion that same is prohibited by Department of Highways v. A. Wilbert's Sons Lumber (346 So.2d 842) and many other opinions, and that the sole issue before this Court with respect to the Landeche interests is the value of the part taken and severance damages. Payment for replacement of the road is, of course, compensable (See Department of Highways v. Champagne, 371 So.2d 626). In this Court's opinion, and after consideration of all experts, the sum of $700.00 per acre severance damages is fair to all parties. The State shall receive credit of $44,685.00, later increased to $61,930.00 deposited with the Clerk of Court as the State's evaluation of `just compensation'.
"Although the question of legal status of Defendant, Gravois was not raised at the Trial but was raised by way of exception prior to the Trial, this Court did not pass on the subject in the Judgment since it is settled that any exception not ruled on prior to Trial is presumed to have been dismissed. I have no trouble in recognizing Mr. Gravois' right to compensation, a lease on land is a thing of value and, in fact, our laws provide a penalty in damages where a lessee is deprived of the land owned by the lessor (R.S. 9:3252).
"The problem of damages, although not as great, presents a more complex problem insofar as Gravois is concerned. His theory of adequate recovery presumes 100% crop success as well as being based on market value without fluctuation. This Court must award to Mr. Gravois the value of the crop taken and severance damages to what remains on his lease, or five years (Department of Highways v. Smith, [La.App.] 353 So.2d 322; Louisiana Highway Commission v. Dunn, [173 La. 998] 139 So. 324).
"In the opinion of this Court, the following sums in damages to Defendant James Gravois represents a fair application of the `cost to cure' appraisal method: (four year crop rotation and planting).

$20,000.00 First Year Damage
 15,000.00 Second Year Damage
 10,000.00 Third Year Damage
 5,000.00 Fourth Year Damage
__________
$50,000.00 Total Damages

"This Court cannot award damages to Gravois for loss of the road as this is an immovable and became the property of the Landeche interests (Killona Access Road).
"The damages prayed elsewhere in Gravois' answer were not awarded as he failed to show that the State's action isolates him from the remainder of the leased land. (State v. Menefee, [La.App.] 266 So.2d 226, and State Highway Department v. Holmes, [253 La. 1099] 221 So.2d 811). It is true that Gravois has the right to remove any improvements placed on the premises by him, however, a lessee is limited to rights secured by the lease. This rule is justified that when property leased is expropriated, the lease is terminated (See 24 La.L.Rev. 849, etc.).
"Each expert witness was required to spend many hours in Court, as well as on the witness stand and the fee of $315.00 is both fair and equitable. Said fee is cast as costs to be paid by Plaintiff, as well as costs of Court and legal interest from date of demand."
The $723,350 award made to the Landeche interests in the judgment of the district court is obviously contradictory to that total award of $260,324.25 arrived at in the written reasons given for the judgment. The district court judge was also in error in noting in the reasons that the remaining Landeche property, after expropriation of the 34.373 acres actually taken, was 254.27 acres. The record reflects the total amount of property owned by the Landeche family *246 was actually 1,315 acres, and after the taking there remained approximately 1,280.6 acres of land of the tract owned by that defendant. Neither can this court find a basis in the record for the court's determination that each acre of the remaining land suffered damage in the amount of $700 per acre, also as noted in the district court's computations, as part of its written reasons. This court, therefore, reviewed the record most thoroughly in order to determine if the award actually given to the Landeche family in the judgment was manifestly erroneous.
The Department of Highways, in brief, does not contest the awards, as noted in the written reasons, for the property actually expropriated nor for the road costs; however, it strenuously objects to the additional severance damages awarded in the judgment, which raised the total award to $723,350.
This court is aware that an award for severance damages is made to an owner to compensate him for decrease in value of the remainder of his property due to partial taking and such damages are defined as the difference between the value of the remaining property before and after the taking. State, Dept. of Highways v. Anderson, 356 So.2d 1086 (La.App. 2d Cir. 1978).
This court is also aware that severance damages cannot be presumed and will not be allowed if based on speculation or conjecture but must be established by competent evidence showing that the land remaining has been diminished in value as a result of the taking; and inconvenience of the landowner, diversion of traffic or change in attending circumstances resulting from the expropriation are not proper elements of severance damages, unless they diminish the value of the owner's remaining property. State, Dept. of Hwys. v. Ross Continental M. L., Inc., 315 So.2d 151 (La. App. 3d Cir. 1975), writ granted, La., 320 So.2d 206, affirmed, 328 So.2d 883 (La.1976).
The burden of proving severance damages, moreover, rests with the landowner and he must meet the burden with legal certainty and by a preponderance of the evidence and such severance damages are determined as of the date of trial. State, Through Dept. of Highways v. Champagne, 371 So.2d 626 (La.App. 1st Cir. 1979), reversed in part on other grounds, 379 So.2d 1069 (La.1980).
Also, much discretion is given to the trial court in evaluation and weight to be given to testimony of each expert witness in expropriation suits, and his findings of value, based on such evidence, will not be disturbed unless clearly erroneous. State, Dept. of Transp. v. Van Willett, 386 So.2d 1023 (La.App. 3d Cir. 1980); State, Department of Highways v. Hickman, 277 So.2d 525 (La.App. 3d Cir. 1973).
The contradictions between statements made by the district court judge in his judgment as opposed to those made in his written reasons, as well as the error in fact regarding the total amount of land actually owned by the Landeche interests as stated in the reasons, indicates clear error in the amount of total damages awarded in the judgment.
Moreover, in the present case, the district court judge, in giving his reasons, says that he finds a "weakness" in Talluto's opinion that each part of the 34.373 acres taken is of equal value; however, later in his reasons he makes an award of $2,250 an acre for all of the 34.373 acres taken not making any distinction of value difference among those individual acres. He also cites, in giving his reasons for arriving at the amount of $2,250 an acre, a comparable sale to C. L. Perillous, dated September, 1972. This is a sale dated after the date of the actual taking; and it was admitted by McClendon, when citing this comparable in his testimony, that he gave very little weight to that particular sale in arriving at his estimate of damages. In view of the above, and in view of the fact McClendon, in his testimony, was not able to break down, analyze or explain exactly how he arrived at his figure for severance damages, this court holds that the district court abused its discretion in accepting the testimony of that expert over that of Talluto *247 and Billa, whom it was stipulated would testify exactly as Talluto had, with the exception that he would place the value of the land taken at $100 more per acre than Talluto's estimate of $1,500.
Additionally, this court on review of the testimony of both McClendon and Talluto found that of Talluto to be the more concise, reasonable and professional of the two. We agree with his conclusions, i. e., that the highest and best use of a portion of the land is industrial rather than "transitional" and that what remained of the land other than that portion also had a higher use, possibly as residential. Due to the reason, as noted in Champagne, supra, that severance damages must be set as of the time of trial, and due to the convincing testimony of Talluto that some of the property had increased in value, as a result of the taking, as much as $500 an acre, and also because, as convincingly opined by him that the taking resulted in total special benefits to the owners of the property in the amount of $120,000 increase in value to the land, we hold that the Landeche interests did not carry their burden of proving severance damages with legal certainty and by a preponderance of the evidence as required by State, Through Dept. of Highways v. Champagne, supra.
As established in State, Dept. of Hwys. v. Ross Continental M. L., Inc., supra, such inconveniences experienced by Landeche in working the sugar plantation and changes in the circumstances that occurred in connection with these problems as established by the Landeche interests are not proper elements of severance damages because they were not able to show that these results of the taking diminished the value of the land itself.
Because the State has not contested the proposed awards to the Landeche interests of $77,339.25 (as noted in the district judge's written reasons) for the 34.373 acres actually taken by the State and $5,000 for the cost of replacing the plantation road, this court will follow the trial court's written reasons in these respects and make the identical awards to the Landeche interests, totaling $82,339.25.
In considering the award made by the district court to Gravois of $50,000, a review of the record indicates that the "$9,000 or $10,000" in damages testified to by Gravois as the increased cost of hauling cane and the second "$9,000 or $10,000" in damages due to increased costs of not being able to use the road in other ways were estimates of Gravois' entire losses over a three-year period, rather than estimates of his yearly losses in lease years following the expropriation. Moreover, it was stipulated between parties that his resulting damages for crops taken or lost due to the expropriation was $7,500.
This court holds, therefore, that the damage award to Gravois was an abuse of discretion as was the court's use of the "cost to cure" method of determining severance damages which, in the present case, was speculative at best. Moreover, the cases cited by the district court judge in his reasons for judgment (State Through Dept. of Highways v. Smith, 353 So.2d 322 [La.App. 1st Cir. 1977]; Louisiana Highway Commission v. Dunn, 173 La. 998, 139 So. 324 [1932]) and the revised statute cited by him (LSA-R.S. 9:3252) are not relevant to the issue of damages before us.
Rather, this court notes the comments made by the appellate court in Champagne, supra, regarding the issue of setting damages of a lessee in an expropriation case:
"The general rule that a lessee is limited to rights secured by the lease advantage is bottomed on the theory that lease rights are personal and not real rights. When the property leased is expropriated, the lease is terminated and absent a contractual agreement to the contrary the lessee has no claim for damages against the lessor. C.C. art. 2697. The lessee has, however, certain claims against the condemnor. His share of the expropriation price is measured by the market value of the lease minus the rent owed by the lessee for the remainder of the lease. 24 La.L.Rev. 849, 873-875. The lessee may also have the right to remove any *248 improvements placed on the premises by him and, if so, he is entitled to the value of those improvements less the cost of removal. The above are just two examples of `lease advantage.'" 371 So.2d at 636.
Since damages to a lessee are considered personal rights rather than real rights in an expropriation case, this court holds that, based on the testimony of Gravois himself and the stipulation of crop loss damages, total damages were only proven in the amount of $27,500.
We note that the judgment of the trial court did not cast the Department of Highways in judgment. Acting pursuant to LSA-C.C.P. art. 2164, the following judgment is rendered: It is ordered, adjudged and decreed that there be judgment in favor of the defendants, Henry L. Landeche, Jr., et al., and against the plaintiff, State of Louisiana through the Department of Highways, in the full sum of $82,339.25 subject to a credit for the amount deposited in the registry of the district court, together with all costs of these proceedings and legal interest from the date of judicial demand.
It is further ordered, adjudged and decreed that there be judgment in favor of James M. Gravois and against the plaintiff, State of Louisiana through the Department of Highways, in the sum of $27,500, together with costs and legal interest from the date of judicial demand until paid.
It is further ordered that the expert witness fees of Peter J. Talluto, David E. Black and S. J. McClendon be fixed at $350 each and that said expert S. J. McClendon is awarded an additional $2,500 for a preparation of trial testimony.
In all other respects, the judgment of the trial court is affirmed.
AMENDED IN PART; AFFIRMED IN PART.