470 So.2d 389 (1985)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT, Plaintiff-Appellant,
v.
Russell E. FORD, et ux, Defendant-Appellee.
No. 84-463.
Court of Appeal of Louisiana, Third Circuit.
May 15, 1985.
*391 Bryan Miller, Baton Rouge, for plaintiff-appellant.
Watson, Murchison, Crews, Arthur & Corkern, R. Raymond, Arthur, Joseph Henry, Jr., Natchitoches, for defendants-appellees.
Before STOKER, LABORDE and KING, JJ.
STOKER, Judge.
This is a case of Expropriation by Declaration of Taking pursuant to LSA-Const. Art. 1, Sec. 4 and LSA-R.S. 48:441-460. The State of Louisiana, Department of Transportation and Development (DOTD) appeals the judgment of the trial court in favor of defendants, Russell E. Ford, and his wife, Jeanette Johnson Ford, for $91,142.50,[1] including attorney fees, together with legal interest and costs, including expert witness fees.

FACTS
On August 2, 1982, a strip of land containing 9.492 acres and owned by the Fords was taken for the right-of-way of Interstate 49 upon the deposit of $11,153 into the Registry of Court. The land taken was part of a larger parent tract owned by the Fords. The land is used for agricultural purposes. The I-49 right-of-way, as it runs through the Ford property, generally parallels the right-of-way of Louisiana Highway *392 1 and the Texas and Pacific Railroad. The Fords own land on both sides of the railroad and Highway 1. After the expropriation, they are left with a narrow strip between the railroad right-of-way and the I-49 right-of-way. This strip is 49.26 feet wide on the south, approximately 73 feet wide on the north and 742 feet long, which amounts to 1.738 acres. The Fords own 71.88 acres east of Highway 1 and 378.39 acres west of the part taken for I-49.
The trial court awarded the Fords $15,300 for the market value of the land taken, $71,995.50 for severance damages, and $15,000 in attorney fees. DOTD was cast for all costs, including expert witness fees set by the court.
DOTD appeals, contending the trial court erred (1) in accepting the expert witnesses' appraisal of the value of the property, (2) in awarding severance damages for the land remaining, other than the 1.738-acre strip, (3) in fixing the amount of severance damages, if any were due at all, (4) in awarding excessive attorney fees and excessive expert witness fees, and (5) in decreeing that interest be paid on the amount awarded as attorney fees.

VALUE OF THE LAND
DOTD contends the trial court erred in accepting Randy LaCaze's appraisal of the property taken because it was legally invalid and contrary to the preponderance of evidence. We do not find the appraisal legally invalid.
DOTD's first reason for arguing the appraisal is invalid is that he valued the property at a time after the expropriation. However, he testified at trial that it would have had the same value at the time of the taking.
The next reason DOTD gives for holding the appraisal invalid is that the appraiser used property sold after the date of the taking as comparables. Sales after the date of taking are generally held not to have probative value for estimating the value of property taken. State, Department of Highways v. Christy, 283 So.2d 533 (La.App. 1st Cir.1973). The reason for not allowing such sales to be used as comparables is that, once the proposed highway development is public knowledge, the fact that a highway will be constructed may affect the sales price. State, Department of Highways v. Dodge, 168 So.2d 430 (La.App. 3d Cir.1964).
The highway project involved in this case is the construction of a limited access interstate highway. There are no interchanges planned for the immediate area of the Fords' property, and the record does not indicate that any of the comparables used adjoin the site of a proposed interchange. The only land we believe would be affected would be land adjoining, or very near, an interchange. Under the circumstances the reason for the rule in question is not apropos here and we do not find the comparables used to be objectionable.
DOTD contends that one of the Fords' appraisers, Randy S. LaCaze, erred in considering a sale to an expropriating authority as a comparable. Sales to the expropriating authority made under the threat of expropriation can be considered in reaching the market value of property to be expropriated, but are not controlling as comparable sales. State v. Carret, 130 So.2d 447 (La.App. 3d Cir.1961). The appraiser used five other comparables. The sale to the expropriating authority was not the highest price per acre. Since such a sale may be considered, it was not reversible error to include it as a comparable. It made no appreciable difference in the value placed on the property.
DOTD argues that the appraiser made no adjustment in the prices of the comparables for differences between the subject land and the comparables. The average price per acre of the comparables was higher than the value the appraiser gave the subject property. Obviously he made adjustments to reflect the characteristics of the subject property.
We do not believe it was contrary to the preponderance of the evidence to use the value placed on the land by Mr. LaCaze. *393 Mr. LaCaze assigned a value of $1,500 per acre to 9.422 acres taken. Together with improvements taken, consisting of 630 feet of barbed wire fence valued by Mr. LaCaze at $1,039.50, the total appraisal of Mr. LaCaze was $15,277.50 which he rounded to $15,300. While the appraisers gave differing values for the property taken, their values do not vary widely. The principal difference is reflected in the estimates for severance damages. The trial court summarized the appraisers' appraisals in its reasons for judgment as follows:

 "Market Value of Severance
 Property Taken Damage Total
Randy S. LaCaze $15,300.00 $71,995.50 $87,295.50
Witness for landowner
J. Barry Guillet 13,763.00 62,632.00 76,395.00
Witness for landowner
James C. McNew 12,340.00 1,360.00 13,700.00
Witness for State
Roy J. Fulco 12,340.00 2,163.00 14,503.00
Witness for State"

The trier of fact was in the best position to determine which appraisal should be given the most weight. All four appraisers testified in court and could be observed by the trial judge. It was not clearly wrong to accept the value of the property taken assigned by Mr. LaCaze. We will affirm the finding of the trial court as to the figure of $15,300.
Since there was no error in the determination of the per-acre value of the property, there was no error in the value assigned to the strip of land between I-49 and the railroad, which lost all of its value after the taking.

SEVERANCE DAMAGES
DOTD contends the trial court erred in awarding severance damages except for the damage to the strip between I-49 and the railroad. An award of severance damages is made to an owner to compensate him for decrease in value of the remainder of his property due to partial taking, and such damages are defined as the difference between the value of the remaining property before and after the taking. The burden of proving severance damages rests with the landowner. State, Department of Highways v. Landeche, 400 So.2d 241 (La. App. 4th Cir.1981), writ denied, 406 So.2d 609 (La.1981).
Randy LaCaze, an appraiser for the Fords, gave percentages of loss of value of various portions of the Fords' land. These estimates of loss of value were based partly on inconvenience to Ford in farming his property after the expropriation, and partly on loss of market value. Inconvenience to an owner in his farming operation resulting from expropriation is not by itself a proper element of severance damages. State, Department of Highways v. Landeche, supra. J. Barry Guillet, another appraiser for the Fords, also based his analysis of severance damage on the difficulties the expropriation will cause Ford in his farming operation.
The State seriously contests the trial court's conclusion that the landowners bore their burden of proving severance damages, except as to the narrow strip which lost all its value. DOTD does not contest the trial court's ruling concerning severance damages assigned for that portion of the land. Damages to that portion of the property are $2,607 (1.738 acres at $1,500). There is a substantial issue relative to severance damages allowed for the remainder of the property, particularly the 71.88 acres east of Louisiana Highway 1.
In its reasons for judgment the trial court stated in pertinent part:

*394 "The Court finds that Mr. Ford has suffered substantial severance damages to the 378.39 acres lying directly West of the part taken for I-49. The Court accepts the testimony of Randy S. LaCaze as being more in line with the market value of the lands taken and the severance damages, and makes the following awards: (Emphasis added)

For market value of part taken $15,300.00
Severance damages 71,995.50
Total 87,295.50"

Mr. LaCaze's total for severance damages, which the trial court adopted, included the sum of $10,782 for the 71.88-acre tract. (Pages 19 and 20 of D-1, Mr. LaCaze's appraisal report.)
The general severance damage factor on which the landowners rely is their contention that drainage problems on the land west of Louisiana Highway 1 required access from that highway and across the railroad and its right-of-way during wet seasons.
Mr. Russell Ford testified that his total acreage consisted of approximately 670 acres, which means that almost 600 acres lay west of Louisiana Highway 1. He lives on Bayou Derbonne which is paralleled by Louisiana Highway 493, a farm-to-market road. Some of the Ford property abuts on Louisiana Highway 493. Although this road on Bayou Derbonne is winding in snake fashion, inspection of the maps in evidence show that the road and bayou are roughly parallel to Louisiana Highway 1. By going south on Louisiana Highway 493 one reaches Louisiana Highway 1 at Derry; by going north one reaches Louisiana Highway 1 at Montrose. By scaling the map marked P-8, the straight line distance between Montrose and Derry is almost exactly four miles. The Ford property which abuts on the Bayou Derbonne and Louisiana Highway 493 is from one and a half to two miles from Louisiana Highway 1. The principal drainage problem appears to apply to some 150 or more acres which lie immediately west of Louisiana Highway 1, the railroad and now the I-49 right-of-way.
The 150 acres, more or less, is low and lies in what is referred to (and designated on the topographical map P-8) as Frost Jackson Swamp. The problem from the landowners' point of view, backed by their appraisers, is that in wet weather and under flooding conditions a bayou and drainage canal at the western side of the 150 acres blocks communication from the west. Under such conditions, Ford gained access to the property cut off by making an eight mile trip through Montrose, down Louisiana Highway 1 to the 71.88-acre tract on the east of the highway and the 150-acre tract on the west of the highway and railroad. These tracts abut on Louisiana Highway 1 about midway between Montrose and Derry.
The landowners had no crossing over the railroad right-of-way and no bridge or culvert over the ditch bordering the railroad and highway. Mr. Ford testified he crossed through a neighbor's property and then to his property.
The landowners have approached the severance damage problem from the unitary theory. Treating all of the Ford property as one economic unit, they contend that I-49 has blocked travel and access to the point that the whole property can no longer be as effectively operated as before, and it will be much more expensive to operate now. The State's appraisers disagree. However, the State apparently recognizes the drainage and access problems it has caused, not only for the Fords but other property owners whose property fronts on Louisiana Highway 1, and has proposed to construct an access road from Louisiana Highway 493 which will provide access from that road to several property owners, including the Fords. The record shows some dispute as to the seriousness of the State in providing this access, other than acquiring the right of way; and if it were constructed, whether any public authority would maintain it. The Fords contend that, even if built, this access road will not get them across the bayou and drainage canal barrier to the west of the 150-tract. It would provide access to 10 to 16 acres only.
*395 The State vigorously contests the validity of the unitary theory as applied to the landowners' farming and cattle raising operations here. Any doubts we may have about the matter of severance damages should be resolved on the basis of the trial court's findings which we attach in pertinent part as an appendix to this opinion. The State has created considerable doubt as to how much actual use the Fords made of access across a neighbor's land to communicate back and forth across the railroad right-of-way and Louisiana Highway 1. However, we feel that the trial court was in a better position to judge the circumstances and effect of the I-49 right-of-way, and we will affirm his finding.
A majority of the panel in this case is of the opinion that the reasons given above justify the allowance of $10,782 in severance damages attributable to the 71.88-acre tract lying east of Louisiana Highway 1 which was the severance damage figure assigned by Mr. LaCaze. All members of this panel agree that the landowners are entitled to these damages because of the extraordinary and exceptional inconvenience caused to them in farming this tract based upon Article 1, Section 4 of the 1974 Louisiana Constitution which provides in part that "... the owner shall be compensated to the full extent of his loss." Because the 71.88-acre tract is so differently situated and differently constituted, we shall give further consideration to this tract.
As we noted earlier in citing the Landeche case, inconvenience to an owner in his farming operation after expropriation is not a proper element of severance damages. See State, Department of Highways v. Ross Continental M.L., Inc., 315 So.2d 151 (La.App. 3d Cir.1975), affirmed 328 So.2d 883 (La.1976) and cases cited therein for the proposition that severance damages will not be allowed on speculation, and they must be established by competent evidence showing that the land remaining has been diminished as a result of the taking. As noted in Landeche an award of severance damages is made to an owner to compensate him for decrease in value of the remainder due to the partial taking, and such damages are defined as the difference between the value of the remaining property before and after the taking.
The 71.88-acre tract is geographically separated by Louisiana Highway 1 from all other portions of the landowners' property, although it is contiguous thereto. Before the taking it had unencumbered frontage on the east side of Louisiana Highway 1. The taking has not altered this fact. Nevertheless there is no doubt but that the landowners in this case will be extremely inconvenienced in the use of the 71.88-acre tract by the taking for construction of I-49. Under the sole consideration of jurisprudence represented by the Landeche line of cases, this inconvenience alone would not entitle the landowners to severance damages. The owners would have to rely on proof that the tract has lost value as a result of the taking. On this point the landowners' proof is somewhat weak, and the State argues forcefully that the landowners did not carry their burden of proof relative to this tract.
Mr. LaCaze, testifying for the landowners concerning the 71.88 acres, gave testimony concerning loss of value resulting from the taking which was equivocal as to whether the expropration had caused a loss in value of this tract when considered by itself. The other landowners' appraiser, Mr. J. Barry Guillet, candidly admitted that there was a good probability that the 71.88-acre tract could be sold after the taking for the same price it would have brought before the taking. Mr. James C. McNew, appraiser for the State, stated that the property would sell readily after the taking for the same price as it would have sold for before the taking. The State's other appraiser, Roy J. Fulco, did not even include the 71.88-acre tract in his appraisal, as he did not consider it had significance in the taking.
The landowners rely on opinion evidence of their experts to establish that the 70-odd acres of agricultural land in the area in question was not of sufficient size to be *396 economically farmed. Mr. McNew testified that it was quite feasible.
As stated above a majority of the panel in this case is of the opinion that the landowners have established their cause for severance damages to the 71.88-acre tract without reliance on constitutional rights under LSA-Const. Art. 1, Sec. 4. All agree that their entitlement may rest on constitutional grounds.
The inconvenience caused Mr. Ford in the use of the 71.88-acre tract is not an inconsiderable or ordinary matter. It is of such an extraordinary nature that the Landeche formula of loss of economic value should not be the sole or overriding test for an award of severance damages. The consequences of separating the Fords from the 71.88-tract have been touched on above. The inconvenience which results is not a matter of mere subjective loss such as was involved in State, Department of Highways v. Johnson, 369 So.2d 191 (La.App. 3d Cir.1979).
Because of the total separation of the tract in question the landowners will be subjected to physical separation of some eight miles or sixteen miles on a round trip basis. Previously the Fords could cultivate their fields from one to another and then cross from the 150-acre tract adjacent to the railroad and Louisiana Highway 1 by simply crossing them onto the 71.88-tract. Now all communication must be by an eight-mile trek on public highways. Rather than being a mere subjective factor involving matters of sentiment and aesthetic values, this inconvenience may be measured in terms of time, expense and exposure to danger.
The moving of farm equipment eight miles on highways obviously involves time, and where the operation is conducted by paid labor, it involves extra expense in wages. It also results in increased costs in fuel and wear and tear on farm equipment not designed for highway travel. On Highway 1, at least, a special danger in movement of equipment will be encountered. This highway, one of the principal highways of the state consists of only two lanes in the area in question. In any event, the financial losses we have referred to will be continuing monetary losses to the Fords. Although the loss may be hard to measure, some award because of the severance should be made to satisfy the constitutional requirement of LSA-Const.1974, Art. 1, Sec. 4 that "the owner be compensated to the full extent of his loss."
The purpose of the 1974 Constitution in Section 4 of Article 1 was to broaden former constitutional concepts of the measure of damages and was intended to keep the owner whole with reference to financial losses. State, through Department of Highways v. Constant, 369 So.2d 699 (La. 1979). Therefore, under the peculiar circumstances of this case the owners' loss occasioned by the resulting exceptional inconvenience should not be considered solely according to the Landeche formula. The 71.88-acre tract should not be treated as a separate tract with respect to whether the taking will adversely affect its value as it might influence the attitude of possible prospective third party purchasers of the property of this single tract.
For the reasons given above we affirm the allowance of the trial court for severance damages of $71,995.50 which includes $10,782 attributable to the 71.88-acre tract.

ATTORNEY FEES
The total award for the part taken plus severance damages is $76,513.50. DOTD contends the attorney fees of $15,000 awarded were excessive. LSA-R.S. 48:453(E) provides:
"Reasonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such attorney fees in no event shall exceed 25% of the difference between the award and the amount deposited in the registry of the court."
The trial court's award is within the 25% allowed and we will not be disturb the award.
*397 DOTD argues that legal interest should not be allowed on attorney fees because there is no precedent for doing so and because the context of LSA-R.S. 48:453 and 455 do not support such an award. We agree. State, Department of Transportation & Development v. Henry, 468 So.2d 1262 (La.App. 3d Cir.1985).

APPRAISER FEES
Finally, DOTD contends the fees awarded the appraisers are excessive. Mr. LaCaze was awarded $3,375 and Mr. Guillet was awarded $2,400, for a total of $5,775. Fees allowed an expert appraiser who testifies in an expropriation case must be reasonable and based on the usefulness of the testimony. State, Department of Highways v. Gordy, 322 So.2d 418 (La.App. 3d Cir.1975), writ refused, 326 So.2d 370 (La.1976). Considering the amount of the award to the landowners approved by us on appeal, we do not consider that the awards to the appraisers are out of line.

CONCLUSION
For the foregoing reasons the judgment of the trial court is amended to provide that the award of attorney fees shall not bear interest. In all other respects the judgment of the trial court is affirmed.
The costs of this appeal are assessed to plaintiff-appellant, State of Louisiana, Department of Transportation & Development.
AFFIRMED IN PART, REVERSED IN PART.

APPENDIX
The following is the opinion of the trial court in this case:

OPINION
This is an expropriation suit involving the taking of 9.492 acres of land in Natchitoches Parish in connection with the construction of the north/south Interstate 49 Highway. The land is agricultural. The four realtor/appraisers who testified made the following observations:

 Market Value of Severance
 Property Taken Damage Total
Randy S. LaCaze $15,300.00 $71,995.50 $87,295.50
Witness for landowner
J. Barry Guillet 13,763.00 62,632.00 76,395.00
Witness for landowner
James C. McNew 12,340.00 1,360.00 13,700.00
Witness for State
Roy J. Fulco 12,340.00 2,163.00 14,503.00
Witness for State

Mr. Ford's farm consists of approximately 670 acres. The I-49 right of way up to this point generally parallels the combined right of ways of Louisiana Highway 1 and the Texas & Pacific Railroad right of way and an Exxon pipeline, and begins to meander in a more westerly direction away from Highway 1. This results in Mr. Ford having a strip of land measuring 49.26 feet wide on the south, approximately 73 feet wide on the north and 742 feet long between I-49 and the existing railroad right of way. Since Mr. Ford has no existing driveway across the Texas & Pacific Railroad from Highway 1, and since the appraisers for the State testified that it would cost Mr. Ford approximately $11,000 to construct a proper crossing according to the Railroad specifications, he has, for all *398 practical purposes, lost the use of this long and narrow 1.738 acres. In the Court's opinion, the plaintiff should have acquired this strip in the original taking, since they are going to end up paying for it anyway.
Very germane and important to this farming operation are two salient facts. The first is that, while Mr. Ford did not have the crossing from Highway 1 over the railroad tracks to his lands located to the West, he had the full use and benefit of the crossing on lands lying immediately South of him without restriction and could exercise this privilege at any time without prior notice. With the construction of I-49 being a limited access highway, even the neighbor no longer has the right to use this crossing.
Mr. Ford's land was divided into two pieces by the preexisting Louisiana Highway 1. Approximately 71.88 acres are located East of Louisiana Highway 1 and prior to the taking of the land for I-49, Mr. Ford could easily farm the lands on both sides of Highway 1, moving his farm tractors and equipment and sometimes his cattle with little difficulty from one side of the road to the other. After the taking by the plaintiff for the construction of I-49, Mr. Ford must now take a circuitous route from the western most part of his land, utilizing Louisiana Highway 493, a distance of eight miles.
Mr. Ford's land is in a low lying area of Natchitoches Parish. The weather conditions during the ten-year period that Mr. Ford has owned this land has varied somewhat, with some years there being a lot of rainfall and other years there was drought. While it is true that some Cane River land would be considered as being capable of producing two crops per year, Mr. Ford's property usually floods in the winter or spring and would generally be subject to growing only one row crop.
The second very salient fact concerning the value of Mr. Ford's property is that the large ditch estimated to be 25 feet across and several feet deep extends entirely across the western part of his land, almost completely cutting him off from Louisiana Highway 493. (See Exhibit P-6; an aerial photograph). The importance of this ditch is that since I-49 prohibits entrance from the East, the large ditch which runs North and South along the western portion of Mr. Ford's property prohibits access to his land in wet weather.
The Department of Transportation and Development has made plans to build an access road off of Louisiana Highway 493 for the convenience of Mr. Ford and his adjoining neighbors to the South, but this access road would only give Mr. Ford access to approximately 16 acres in wet weather because of the rather large ditch. No one who testified could say when the plaintiff intended to build this access road. (Please refer again to Exhibit P-6).
The Court finds that Mr. Ford has suffered substantial severance damages to the 378.39 acres lying directly West of the part taken for I-49. The Court accepts the testimony of Randy S. LaCaze as being more in line with the market value of the lands taken and the severance damages, and makes the following awards:

For market value of part
 taken $15,300.00
Severance damages 71,995.50
Total 87,295.50

The Court finds that Mr. Ford is entitled to attorney fees and awards $15,000 as attorney fees.
The expert witness fees of Randy S. LaCaze is set at $3,375.00 and that of Mr. Guillet at $2,400.00 and taxed as costs. The plaintiff to pay all costs.
Opinion rendered at Natchitoches, Louisiana, on this, the 3rd day of February, 1984.
 s/W. Peyton Cunningham, Jr.
 W. PEYTON CUNNINGHAM, JR.
 JUDGE
STOKER, Judge, concurring.
As I authored the opinion in this case, I concur fully in the result reached. With respect to allowing the severance damages of $10,782 for the 71.88-acre tract east of Louisiana Highway 1, I base my views *399 solely on the constitutional grounds stated in the opinion.
NOTES
[1] The total net award by the trial court of $91,142.50 was computed as follows:

Compensation for property
 taken $15,300.00
Compensation for severance
 damages 71,995.50
Less, sum previously deposited
 by the State in this matter (11,153.00)
Attorney fees 15,000.00
 __________
TOTAL NET AWARD $91,142.50