493 So.2d 125 (1986)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT
v.
Cornelius A. HECKER and Alice Ruth Keefe Hecker.
No. 86-CA-47.
Court of Appeal of Louisiana, Fifth Circuit.
June 2, 1986.
Writs Denied October 3, 1986.
*127 Ronald J. Bertrand, Bertrand & Soileau, Rayne, for State of Louisiana, Department of Transportation and Development, plaintiff-appellee.
Nathan T. Gisclair, Jr., Andrew M. Edwards, II, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for Cornelius A. Hecker and Alice Ruth Keefe Hecker, defendants-appellants.
Before DUFRESNE, WICKER, JJ., and NACCARI, J. Pro Tem.
J. BRUCE NACCARI, Judge Pro Tem.
This is an expropriation case in which the Department of Transportation and Development took the defendants' entire property. Both sides have appealed the judgment awarding compensation to the defendants in excess of the Department's appraisal.
The defendants, Alice and Cornelius A. Hecker, owned land and improvements at Shrewsbury Road in Jefferson Parish. There a corporation owned by themselves and their sons had successfully operated a bulk oil distribution facility for many years. Finding no replacement facility in the Greater New Orleans area, they purchased another property at Bloomfield Street in Metairie and built a new facility. The improvements were basically a duplication of the old one, consisting of large storage tanks, warehouse, loading dock, paving, and fencing. The defendants rejected the Department's offer of $113,158 for the property, whereupon the Department filed expropriation proceedings and deposited $113,158 into the registry of the court. After three days of testimony the trial judge took the matter under advisement and on September 9, 1985 rendered judgment in favor of Mr. and Mrs. Hecker in the amount of $215,715, plus $16,000 in attorney's fees, $1,500 in expert witness fees, and $2,500 in appraisal fees, plus costs. No reasons for judgment were provided and it is unclear whether the judge's award of $215,715 included the Department's deposit or was in addition to it.
The defendants raise the issue of whether the amount of compensation awarded was adequate under the circumstance of their having to relocate a going business and rebuild their plant. The plaintiff raises the question of whether the defendants carried their burden of proof that they are entitled to compensation in excess of the deposit.
The Law
The Constitution of 1974, in article 1, section 4, provides that when property is expropriated by the state, "the owner shall be compensated to the full extent of his loss." That provision also appears in LSA-R.S. 48:453(C) of the so-called "quick taking statute," LSA-R.S. 48:441-460, enacted by Acts 1974, Ex.Sess. No. 30, effective January 1, 1975. The statute provided a means for the Department of Transportation and Development to acquire property for highway purposes prior to a court judgment.
The Supreme Court considered just compensation of an owner whose business was substantially destroyed by the Department's expropriation in State Through Dept. of Highways v. Constant, 369 So.2d 699 (La.1979). In that case the entire parking and loading area of a marina was taken, which if not replaced would destroy the business operation. The state had based its award on the market value of the land prior to taking. The court held that the cost of replacing the loading and parking area was the most appropriate method of compensation for the loss caused to the marina operation.
In a subsequent case, State Dept. of Highways v. Bitterwolf, 415 So.2d 196 (La. 1982), the Court dealt with a question of compensation for depreciation caused by the proposed improvement for which the property was expropriated. In holding in favor of the state the Court said, at 198:

*128 "... An owner cannot recover more than compensation to the full extent of his loss for property taken or damaged by the state. Although the constitutional right to property does not prohibit the state from compensating an owner for more than the full extent of his loss, it has never been the aim of our implemental legislative and jurisprudential precepts to require anything more than just compensation for the owner's loss. La. R.S. 48:453, which was amended to incorporate these precepts and the constitutional principle of just compensation, is designed to compensate an owner only to the full extent of his loss."
Just compensation has been interpreted to mean that the owner is put in as good a pecuniary position as before the taking. State Through Dept. of Highways v. Constant, supra; Marathon Pipe Line Co. v. Pitcher, 368 So.2d 994 (La.1979).
In an expropriation case, the burden of proof is upon the landowner to establish his claim to a legal certainty and by a reasonable preponderance of the evidence. An award of the trial court is subject to the manifest error rule. State D. of Trans & Dev. v. Estate of Clark, 432 So.2d 405 (La.App. 1st Cir.1983).

Method of Valuation of Expropriated Property
Three traditional methods of estimating the fair market value have been accepted by the courts in expropriation cases: comparable sales, capitalization of income, and cost less depreciation. The constitution does not limit the courts to one or another method of calculating the value, requiring only that the approach used will result in an amount that fully compensates the landowner for his loss. State Through Dept. of Highways v. Constant, supra.
The state's appraisers used the traditional cost approach, which is an estimate of replacement based on the original cost adjusted for inflation and depreciation. L.J. Roy valued the land at $41,000 and the depreciated improvements at $79,000, a total value of $120,000. Jack E. Evans, Jr. appraised the property twice, first at $113,158 for the whole, which is the amount the state deposited in May, 1980, and later at $121,788 as of the date of taking. Both appraisers rejected the comparable sales approach, as no bulk plants had been sold recently in the area. In his second appraisal, Mr. Evans made a capitalized income comparison of the old and new facilities in order to prove that the defendants were in an equivalent pecuniary situation after the taking and the state's deposit was sufficient to compensate them fully.
The landowners' position is that the only appropriate method of valuation is the actual cost of replacement, undiminished by any allowance for depreciation of the expropriated property. In order to be fully compensated for their loss they must be awarded total land acquisition and construction costs, financing costs, and income foregone from other assets which they liquidated to pay for the new facility.

Necessity For Replacement
The Heckers had built their facility at Shrewsbury Road in 1964 prior to the enactment of parish zoning and safety codes. When the area was zoned multi-family residential, their property was classified as a non-conforming use and the business was allowed to continue. Irvington J. Eppling and James F. Osborne, the defendants' appraisers, testified that the site purchased was the only available property with the correct zoning, M-2 heavy industrial. There was no improved property to which the Hecker operation could move. Eppling stated that because of new rules and requirements a larger site was required to produce the same storage capacity. In order to build at the new site on Bloomfield the Heckers had to get a variance from the Jefferson Parish moratorium for building bulk plants.
From Mr. Hecker's personal point of view, it was essential to continue the business. He testified that he had been a wholesale distributor since 1949, and sold Exxon products from the Shrewsbury plant to commercial customers and small service stations, delivering throughout the New *129 Orleans area in his own trucks. He knew no other business and had limited education. He was not ready to retire and had expected to continue his business at the old plant indefinitely. The facility required little maintenance, which he performed as needed, and he had adequate storage even if the business expanded.
From a business point of view, the record confirms the decision to continue in business as the appropriate one. Francis Simon, the Hecker's accountant, testified that the net income from the corporation ranged from $60,000 in 1976 to $120,600 in 1981, with gross sales from $3,203,000 in 1976 to $6,252,000 in 1980. Kenneth Boudreaux, an economist, testifying for the defendants, evaluated the business as a going concern by two methods. The first, the "price-earnings multipliers method", yielded values as of the date of taking from a low of $569,921 at 17½% net discount rate for 10 years, fractionally adjusted to add back a portion of the Heckers' salaries, to a high of $755,766 at a 10% net discount rate for the same period, also fractionally adjusted; the fully adjusted numbers were $665,602 and $882,646. The second method, "present value of after-tax income at a compounded annual growth rate", produced fractionally adjusted values for ten years of $600,850 at the 17½% net discount rate and $791,950 at 10% discount. All estimates exceed the replacement costs incurred of $496,653.
It should be pointed out that Mr. Hecker began searching for a new site in 1979, in an effort to avoid a lapse of business and retain his clientele. The contractor, Calvin P. Jones, Jr. testified that his crew finished the job in 4½ months to accomodate Mr. Hecker in moving from the old facility.
Appraisers for both sides testified that the existing plant had no discernible functional or economic obsolescence and was in reasonably good shape. It was unrebutted that the new plant was essentially a replication of the old. The contractor, Jones, and the architect, Richard Border, testified that cost had been a factor, that the new building was an efficient but simple design, with no mechanical or technological advantages over the old one. The site was difficult to work with, being soft and mucky, so that truck roads had to be paved rather than shelled. Virtually all differences between new and old were dictated by current governmental regulations.
We find that the defendants are correct in maintaining that they are entitled to recover the replacement cost without deduction for depreciation. The factual situation here is very much like the facts of the Constant case, supra, and of Monroe Redevelopment Agency v. Succession of Kusin, 398 So.2d 1159 (La.App. 2nd Cir.1981). Both those cases involved partial taking, but the courts found that the property expropriated was unique and indispensable to the occupants' continuing in business. Further, because the use values of the old structures and the replacements were equivalent, the defendants were entitled to full replacement cost without depreciation for their use of the old structures.
The state does not argue that rebuilding was unwise or unnecessary. It does contend that since Hecker Oil is making virtually the same profit and the Heckers are receiving more from the corporation in the form of higher rent since the move, and also because they now have a new facility, they are in the same pecuniary position as before the taking. Mr. Evans, the state's realtor and appraiser, used the income approach to compare the old and new facilities in terms of the Heckers' pecuniary situation before and after. In terms of cash flow to the Heckers, Evans projected that after the taking the Heckers would have slightly more personal income than before, despite having expended their own assets to rebuild their facility.
The state has provided no authority for its position other than its own appraisers' statistics. We find no cases in which the court looked to the income from assets outside the expropriated property. The landowner's pecuniary position has been evaluated only in terms of making him whole vis-a-vis the taking. It is well documented that the Heckers had to spend *130 several hundred thousand dollars over and above the state's deposit in order to place themselves back in business. Even if the business became more profitable or if through astute use of tax benefits the Heckers had more spendable income afterward, they were entitled to recoup their cost. Accordingly, we reject the state's argument that its deposit was sufficient to make the defendants whole.
The defendants urge that in addition to the cost of land, construction, and equipment they are entitled to compensation for the cost of financing. The Heckers liquidated assets in order to finance the project, and their economist calculated the income foregone at $146.719. He based his calculation on actual seven-year treasury bill yields from the date the money was expended on the plant to date of trial. Michael J. Shannon, Executive Vice President of the First National Bank of Commerce, estimated that the cost of borrowing, using rates for the period, would have been $190,603. We recognize that the cost of financing is a real and valid expense of replacement, particularly in this case where at time of trial the defendants' personal assets had already been liquidated and the proceeds spent on the plant. However, we find no authority in the jurisprudence for awarding lost investment income or interest paid to a lender to finance replacement of an expropriated property. We believe that the legislature intended to compensate landowners at least partially for the loss of use of money by providing interest from the date of taking to the date of payment on the award of an excess over the state's deposit.[1]
Accordingly, we amend the judgment of the trial court and award the defendants the actual cost of land and of improvements to replace their expropriated property in the amount of $496,653 less the amount of $113,158 deposited by the state into the registry of the court.

Attorney's Fees and Expert Witness Fees
The defendants have appealed the award of $16,000 in attorney's fees and ask for the statutorily provided maximum of 25% of the difference between the state's deposit and the award. The trial court has much discretion in awarding attorney's fees. As pointed out in numerous cases, a number of factors should be considered, including the complexity of the case, the responsibility required of the attorney, his skill, knowledge, and diligence, the result obtained, and the work performed. State, Dept. of Transp. and Develop. v. Tynes, 433 So.2d 809 (La.App. 1st Cir.1983), writ denied 437 So.2d 1153 (La.1983); State, Dept. of Transp. Etc. v. Frabbiele, 391 So.2d 1364 (La.App. 4th Cir.1980). We find that the case at hand is complicated and involved considerable skill as well as time, labor, and responsibility on the part of the attorneys. Accordingly, we award the defendants 25% attorney's fees on the net amount of the judgment.
The trial court has much discretion in setting expert witness fees, which must be reasonable and based upon the usefulness of their testimony. State, Dept. of Transp. and Dev. v. Exxon Corp., 430 So.2d 1191 (La.App. 1st Cir.1983); Missouri Pacific R. Co. v. Nicholson, 460 So.2d 615 (La.App. 1st Cir.1984); State, Dept. of Transp. and Development v. Ford, 470 So.2d 389 (La.App. 3rd Cir.1985).
The trial court awarded the following amounts to the ten expert witnesses:

Michael J. Shannon $ 100.00
Donald Hattier 150.00
Francis G. Simon 100.00
Richard Border 100.00
Calvin P. Jones, Jr. 150.00
Robert R. Haase 150.00
James L. Crowl 150.00
Kenneth J. Boudreaux 200.00

*131
Irvington J. Eppling $ 200.00
Frederick M. Guice 200.00
 _________
Total Experts' Fees Awarded $1,500.00

We have considered the awards in light of the criteria set forth in the jurisprudence, along with the evidence of time spent and expertise of the witnesses, and find all but three awards to be correct. Finding the allowances for those experts to be low, we amend and raise the awards as follows: for Robert R. Haase to $1,000; for James L. Crowl to $1,500, and for Kenneth J. Boudreaux to $1,025. The total award for experts' fees is thus increased to $4,525. The judgment is correct as to the appraisal fees of $1,500 for Irvington J. Eppling and $1,000 for Frederick M. Guice.

Interest
As noted above, the statute requires that the landowner be awarded legal interest on the amount of the judgment in excess of the deposit by the state, and we amend to include interest.

Decree
For the reasons stated above, we amend the judgment appealed from to award the defendants Cornelius A. Hecker and Alice Ruth Keefe Hecker compensation in the amount of $496,653 less the amount of $113,158 deposited by the State of Louisiana, Department of Transportation and Development into the registry of the court. We award the defendants attorney's fees in the amount of 25% of the excess of the judgment over the deposit. We award Robert R. Haase $1,000, James L. Crowl $1,500, and Kenneth J. Boudreaux $1,025. We award the defendants legal interest on the difference between the amount of the compensation awarded and the amount deposited into the registry of the court by the state. All costs, including costs of this appeal, are to be borne by the plaintiff. In all other respects the judgment appealed from is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] LSA-R.S. 48:455 reads as follows:

The judgment rendered therein shall include, as part of the just compensation awarded, legal interest on the amount finally awarded as of the date title vests in the plaintiff to the date of payment, but interest shall not be allowed on so much thereof as has been deposited in the registry of the court.