371 So.2d 626 (1979)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Vivian E. CHAMPAGNE et al., Defendant-Appellee.
No. 12358.
Court of Appeal of Louisiana, First Circuit.
April 16, 1979.
Rehearing Denied May 29, 1979.
*629 Bryan Miller and Johnie E. Branch, Jr., Baton Rouge, for plaintiff-appellant.
Thomas L. Wright, Houma, for defendant-appellee.
Before SARTAIN, CHIASSON and EDWARDS, JJ.
SARTAIN, Judge.
This suit together with a companion one, State v. Ellender, 371 So.2d 638, involves lands for a right of way for improvements to State Route No. 24 in Terrebonne Parish, commonly referred to as the Bourg-LaRose Highway. They were consolidated for trial purposes in the district court. The properties taken are contiguous and we shall hereinafter refer to them according to fee ownership, i.e., Ellender and Champagne. We shall also relate all of the facts and our reasons for judgment in this (Champagne) suit but shall render a separate judgment in the Ellender suit. Wallace R. Ellender, Jr. was the sole defendant in the suit bearing his name. However, he was also made a defendant in the Champagne suit as the record-lessee of the Champagne property.
The State of Louisiana, Through the Department of Highways (now known as Department of Transportation and Development and herein referred to as State) expropriated the properties under the provisions of R.S. 48:441-460. The date of the taking is February 7, 1974. Therefore, these proceedings are governed by R.S. 48:441, et seq., as added by Act 107 of 1954 and the Constitution of 1921 rather than the same numbered statute as amended by Act 30 of 1974 Ex.Sess. and the La.Const. of 1974.
In the Champagne suit judgment was rendered in favor of the defendants in the total sum of $163,794.88[1] which for further reference we itemize as follows:

1. Value of 12.511 acres taken $73,660.00
2. Severance damages to 8.3
 acres 41,500.00
3. Crop losses on part taken 3,796.58
4. Crop losses on part not
 taken 3,149.86
 _________
 Subtotal $122,106.44
Damages to be paid by Champagnes
to Lessee-Ellender:
5. Crop losses on part taken 18,982.92
6. Crop losses on part not
 taken 15,749.31
7. Cost of relocating field
 roads 2,000.00
8. Cost of dismantling and rebuilding
 loading ramps 4,456.08
9. Cost of dismantling cane
 derrick 500.00
 _________
 Subtotal 41,688.31
 ___________
 Total $163,794.75

The State was given credit for $17,225.00, being the amount previously deposited with the court, leaving a balance due the defendants in the sum of $146,569.75, subject to Ellender's claim for $41,688.31.
In his suit, Ellender was awarded judgment in the total sum of $16,256.00, which we also itemize for further reference:

1. Value of .3756 acres taken $ 3,756.00
2. Severance damages to the remaining 2.5
 acres 12,500.00
 __________
 Total $16,256.00

The State was given credit for $600.00, as the amount previously deposited with the court, leaving a balance due Ellender in the sum of $15,656.00.
The State alone has appealed. The defendants in both suits have neither appealed nor answered the State's appeal. We affirm in part, reverse in part, and remand with instructions.

EXTENT OF LANDS TAKEN
The State seeks to expropriate the property herein involved in fee simple, but reserving the minerals to the landowners. The issue is further complicated by virtue of the fact that the property sought to be expropriated is parallel to an existing highway which the State claims to have acquired in part by a recorded right of way deed and the balance of the property by virtue of appropriation.
Originally State Route No. 24 was a private road. In 1931 the State obtained a *630 right of way deed from Albert Champagne (the defendants' ancestor in title) and Morvella Aucoin Guidroz (previous owner of lands abutting the proposed new highway on the west). However, the Champagne deed only covered a portion of the highway. It is undisputed that the remainder of the highway was constructed on lands without the benefit of formal right of way deeds. The original road in 1931 was graded to a width of fourteen feet. In 1941, the traveled portion of the roadbed was "widened and shelled" to a width of twenty-one feet. In 1965, the traveled portion of the roadbed was widened to a width of twenty-two feet and hard-surfaced.
The 1931 right of way granted to the State by Albert Champagne provided for a width of forty feet "from the center line to the right" of the proposed right of way "between survey stations 0 + 100 and 74 + 00." The instant appropriation extends the taking to survey station 102 + 50. It is the distance between these latter two survey stations (by a width of forty feet) that the State claims to have acquired by appropriation.
At some point during the pendency of this litigation it was discovered that the forty foot right of way granted by Albert Champagne in 1931 did not continue across the full length of his property. This fact was either unknown to or ignored by the State when the road was originally constructed and subsequently improved in 1941 and 1965. However, prior to trial, the defendants in their answer claimed compensation for the area serving as part of the earlier roadbed without the benefit of a written right of way deed. They aver that this area contains 4.976 acres. It is this same area that the State contends it has acquired right of way rights by appropriation under the St. Julien theory.
The St. Julien doctrine is a jurisprudentially created theory allowing the creation of a servitude by unopposed use and occupancy by a corporation with the power of expropriation. The acquiescing landowner cannot later eject the occupant and recover damages for trespass. Rather, he is relegated to an action for compensation for the value of the property taken and for severance damages. A. K. Roy, Inc. v. Board of Com'rs for Pontchartrain Levee District, 238 La. 926, 117 So.2d 60 (1960); Gumbel v. New Orleans Terminal Co., 197 La. 439, 1 So.2d 686 (1941); St. Julien v. Morgan Louisiana & Texas Railroad Co., 35 La.Ann. 924 (1883); Note, 51 Tul.L.Rev. 375 (1977).
Defendants argued, and the trial judge agreed, that the St. Julien doctrine cannot be applied in the instant case due to its abrogation by the Supreme Court in the case of Lake, Inc. v. Louisiana Power & Light Co., 330 So.2d 914 (La.1976). Both are in error.
In 1976, the Supreme Court in Lake did overrule the St. Julien doctrine but it ameliorated the effect of its ruling with the following statement:
"However, the St. Julien doctrine has become a rule of property, probably relied on by utilities since its establishment. Because the doctrine has been so entrenched and repeatedly affirmed by this court, the ruling in this case, as to property not involved in this suit, will be prospective only, affecting conduct occurring after the finality of this judgment." (Emphasis ours.)
We interpret this to mean that the St. Julien doctrine continues to be the applicable law for determining the effect of an unopposed occupancy which occurred prior to the final judgment in Lake. See Trustee Corp. v. Allen, 359 So.2d 715 (La.App. 4th Cir. 1978); State Through Dept. of Highways v. Thurston, 338 So.2d 154 (La.App. 2d Cir. 1976). Since the appropriation in the instant case occurred long before the Lake ruling, the St. Julien doctrine is viable law for our purposes.[2]
*631 While defendants do not dispute that their ancestor in title was aware of the highway construction and that he voiced no opposition to it, they assert that no acquiescence has been shown because there is no proof that the landowner (Albert Champagne) knew that the Highway Department was using more land than he had included in the right of way deed.
Acquiescence is essential to the St. Julien doctrine, which is based on principles of natural equity and public policy. It declares that a property owner is prevented from unduly disrupting a public purpose use of his property when he has remained silent and acquiesced in such use. Harrison v. Louisiana Power & Light Co., 288 So.2d 37 (La.1973).
We have no trouble finding acquiescence on the part of defendants' ancestor in title. He was a party to the right of way deed and therefore is presumed to know what it contained. Also, the encroachment in this instance was a very significant intrusion onto his property, not merely a matter of a few feet but literally several thousand feet, which has continued since 1931. For these reasons, we conclude that the State acquired by operation of the St. Julien doctrine a servitude over the lands of the defendants.
The State's contention that the servitude it acquired by appropriation was to a width of forty feet must be rejected. The jurisprudence pertaining to the St. Julien doctrine is quite clear. A servitude is acquired only that portion of an owner's property that is physically occupied. Consolidated Companies, Inc. v. Haas Land Co., Ltd., 179 La. 19, 153 So. 6 (1934); John T. Moore Planting Co. v. Morgan's La. & T.R. & S.S. Co., 126 La. 840, 53 So. 22 (1910); and Louisiana Power & Light Co. v. Dileo, 79 So.2d 150 (La.App. 1st Cir. 1955). The burden is on the occupant (here the State) to prove the extend of the land previously used. Thurston, above.
It is essential to a determination of how much of defendants' land the State is taking in fee simple that the limits of the previously existing servitude be fixed. Further, the portion taken by the State in fee simple must be designated by a proper legal description and the expropriation order amended accordingly. While the original expropriation order may suffice for the purpose of expediency under the quick taking statute, that order cannot be permitted to stand where it is shown to be inaccurate. Title to land cannot be properly transferred when the legal description thereto does not reflect its location and dimensions. It is for this primary reason that a remand is necessary. We can understand why the trial judge did not in his written reasons for judgment designate by appropriate legal description the 12.515 acres he held to have been taken, as opposed to the 6.99 acres claimed by the State. The record in its present state does not contain sufficient evidence to permit it.
One final comment on the issue as to the extent of the land taken: In his written reasons for judgment the judge a quo included in his total acreage of the amount of land taken three parcels of land containing .096 acres, .545 acres, and 1.63 acres, respectively. The first two parcels were held to have been rendered unusable by virtue of the taking. They were not "taken" and any compensation awarded the owners with respect thereto should have been in the nature of and for severance damages. The last parcel (1.63 acres) was not "taken" either. This land is located within the St. Julien servitude and any award for its value should have been designated accordingly. We agree with the State that it cannot be forced to purchase in fee simple land which it does not wish to purchase. The question of compensation to the owner for its appropriation is another matter as we have noted hereinabove.

VALUE OF LAND TAKEN
The trial judge included in his award for just compensation the acreage the State now seeks in fee simple and compensation to the Champagnes for the acreage *632 contained in the St. Julien servitude.[3] With respect to this latter acreage, the State urges that the defendants' claim for compensation is subject to the three-year prescriptive period provided for in R.S. 13:5111(A). The issue of prescription is not before us as no formal plea of prescription has been filed either in the trial court or in this court. Although an exception of prescription may be filed for the first time in an appellate court, it must be presented in a formal pleading and not by brief alone. Motor Machine & Supply Co. v. Delilah Towing Co., Inc., 321 So.2d 896 (La.App. 1st Cir. 1975), writ refused 325 So.2d 279 (La.1976); Scott v. Boh Bros. Construction Co., 195 So.2d 353 (La.App. 4th Cir. 1967); C.C.P. arts. 927, 2163.
The parent tract of the Champagne and Ellender properties comprises what is known as the Klondyke Plantation which contains some eight hundred twenty acres of sugar cane production. State Route No. 24 traverses this plantation and the seven individual parcels of land taken in these proceedings parallel the existing highway and contain such widths and depths as to conform to the plans for its widening and straightening.
Three experts testified, Messrs. Carlock and Dugan for the State and Mr. Chauvin for the landowners. Each of these appraisers used the market data approach (based on comparable sales in the area) which also included the "front land-rear land" theory of appraisal.[4]
Mr. Carlock considered the property to a depth of three hundred feet from the highway. Mr. Dugan considered the property in one, two, and three acre tracts fronting on the highway. Both of these gentlemen were of the opinion that the highest and best use of the property fronting on the highway was for subdividing into small tracts for rural residential home sites. Mr. Carlock opined that the value was $7400.00 per acre which he discounted ten percent because of the large number of lots involved or $6700.00 per acre. Mr. Dugan was of the opinion that the value of the part taken was $7405.00 per acre. He did not think that any discount was warranted.
Mr. Chauvin's evaluation was based on the frontage of the property in its relation to the intersection of State Route No. 24 and State Route No. 55 (Bayou Terrebonne Highway).. He placed a value of $10,000.00 per acre on the first 1384 feet (Survey Stations 2 + 50 to 16 + 34, Tracts 1-8 and 1-7), $7500.00 per acre on the next 3366 feet (Survey Stations 16 + 34 to 50 + 50, Tracts 1-6, 1-9 and part of 1-5), and $5000.00 per acre on the remaining 5245 feet (Survey Stations 50 + 50 to 102 + 50, balance of Tract 1-5, Tracts 2-1 and 2-6).
With respect to the Champagne tracts (all except 1-7), the trial judge took an average of the values placed thereon by the State's appraisers or the sum of $6915.24 per acre and placed that value on the part taken. The State does not contest this value. While the averaging of appraisals may be questioned in some instances, Greater Baton Rouge Consol. Sewer Dist. v. Nelson, 144 So.2d 186 (La.App. 1st Cir. 1962), the Champagnes have neither appealed nor answered the State's appeal and this figure is now final as to them for the part taken.
However, the trial judge assigned a value of $10,000.00 per acre on the Ellender property (Tract 1-7) for the part taken and further based his award for severance damages on a value of $10,000.00 per acre on the pertinent remainders. The State does contest this value and asks that the amount *633 be reduced to the sum of $6915.24 for the part taken from Ellender. The issue as to severance damages will be discussed later in this opinion.
The assignment of a value of $10,000.00 per acre on the Ellender property is based on the expert testimony of Mr. Chauvin, who stated that the highest and best use of the Ellender property (Tract 17) and Tract 1-8 of the Champagne property was for commercial and/or industrial purposes. The record does not support this conclusion.
In State, Dept. of Highways v. Levy, 242 La. 259, 136 So.2d 35, 43 (1961), the court stated:
"A fundamental principle of the law of evidence is that expert testimony given in response to hypothetical questions predicated on a statement of unproven facts, has no probative value and should not affect the outcome of a case." (Citation omitted.)
It is also well settled that potential use of expropriated property may be deemed its best and highest use for the purpose of determining its value provided that there is a reasonable expectation that the property may be so developed and utilized in the reasonably foreseeable future. State, Through Dept. of Highways v. Romano, 343 So.2d 222 (La.App. 1st Cir. 1977); State, Dept. of Highways v. St. Tammany Homestead Ass'n, 304 So.2d 765 (La.App. 1st Cir. 1974), writ refused, 307 So.2d 373 (La.1975); and Parish of East Baton Rouge v. Thomas, 346 So.2d 364 (La.App. 1st Cir. 1977).
In the instant case, the only evidence in the record that the highest and best use of these two tracts is for commercial purposes is the unsupported statement of Mr. Chauvin. The comparables used by this expert in determining his base value were residential sales. He frankly conceded that there were no commercial comparables. He based his conclusion as to their commercial use on their proximity to the intersection and his "general knowledge" of real estate in Terrebonne Parish. He cited no facts which would show any reasonable demand for commercial and/or industrial property within the general area of the subject properties.
Neither of the State's appraisers found any need for or any comparable sales of commercial property in the area of the expropriated property. Mr. Dugan stated that his value of $7405.00 per acre would remain the same whether the property is purchased for home sites, commercial or industrial purposes. He based his conclusion on the lack of demand for commercial or industrial sites in the area and further stated that if an industrial user were interested, he would pay no more than $7405.00 per acre because all of the property in the area is unzoned and could be used for both purposes.
For these reasons, the value of $10,000.00 per acre assigned to the Ellender tract based on the premise that its highest and best use is for commercial/industrial purposes must be rejected.
However, we do not agree with the State that the value of $6915.24 per acre is appropriate. The appraisals of Mr. Dugan at $7405.00 and Mr. Chauvin at $7500.00 (except for the commercial aspect) are based generally on the same comparables. They differ only as to the adjustments made by each as to time, etc. We accept the figure of $7500.00 per acre for the part taken of the Ellender property (Tract 1-7) and the judgment of the trial court will be amended accordingly.

SEVERANCE DAMAGES
The only two tracts involved in the issue as to severance damages are Tract 1-8 owned by the Champagnes and Tract 1-7 owned by Ellender. The basis for defendants' claims is the existence of a ditch which parallels the new construction and severs these tracts from it. The ditch narrows in width from west to east from forty-three feet to thirty-two feet at the top, from thirteen feet to eight feet at the bottom, and varies in depth from six and one-half feet to five and one-half feet. Previously there was only a small ditch that *634 could be bridged with a twelve to eighteen inch culvert.
Neither of the State's experts found any damage to the remainders. The defendants' appraiser and the trial judge did and we agree. We fail to see how there could be uniformity of agreement that the highest and best use of this property was for subdivision into small, one, two or three acre tracts, and yet be a division of opinion as to the need for access to them. The measure of these damages, though, is another matter.
The State contends that the trial judge committed an error of law in accepting the defendants' appraisers "cost to cure" approach in his assessment of severance damages. Before addressing ourselves to that witness' testimony, we note the following well-established rules of law relating to severance damages: A landowner is entitled to recover for damages to the remainder of his property which are occasioned by the taking. These damages are determined as of the date of the trial. R.S. 48:453; State, Through Dep't of Highways v. Romano, 343 So.2d 222 (La.App. 1st Cir. 1977). They are ordinarily calculated as the difference between the value of the remaining property before and after the taking. State, Dep't of Highways v. Denham Springs Development Co., Inc., 307 So.2d 304 (La.1975); State, Through Dep't of Highways v. Hoyt, 284 So.2d 763 (La.1973). The burden of proving such damages rests with the landowner who must satisfy the same with legal certainty and a preponderance of the evidence. State, Through Dep't of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1961). The "cost to cure" appraisal method, except in a most unique situation, is not considered as a sound approach to the determination of severance damages as it may not truly reflect the before and after value of the remainder. State, Through Dep't of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969); State, Dep't of Highways v. Trippeer Realty Corp., 276 So.2d 315 (La.1973). There is authority, however, for the proposition that the "cost to cure" approach may be used where the damages to be derived are less than the decrease in the market value. State, Dep't of Highways v. Alexandria Volkswagen, Inc., 348 So.2d 176 (La.App. 3d Cir. 1977).
We are satisfied that the dispute as to severance damages, vis a vis the "cost to cure" appraisal method, is the result of the trial judge's misinterpretation of the defendants' expert's testimony.
Mr. Chauvin reasoned that because of the width and depth of the ditch, it would be necessary to cover it with a large culvert at a cost of $5000.00 per acre if its use were commercial or at a cost of $1500.00 to $2000.00 per acre if its use were residential. These figures are based on estimates that he obtained from contractors. The difference in these cost figures is reflected in his opinion that a commercial user would need to have the entire ditch covered whereas a residential user would only need a driveway entrance. Although he did not break it down in front footage cost, his testimony is abundantly clear that he was talking about acre frontage. He did not concern himself with the depth of the properties. It matters not if one accepts the highest and best use of the properties as commercial or residential, his approach is the same. Only the costs will vary.
Assuming, arguendo, that the "cost to cure" theory is appropriate here, the trial judge erred in construing Mr. Chauvin's testimony to apply to the entire remainders of these two tracts regardless of their respective depths.
The question then is whether the facts in the instant case present so unique a situation as to warrant the "cost to cure" appraisal. We hold that it does for the following reasons: First, we are satisfied that the ditch presents a severe obstacle and virtually isolates these tracts from the highway, thereby rendering their division into one, two or three acre tracts for residential purposes impossible. Second, damages based on the "cost to cure" approach as utilized by Mr. Chauvin are less than damages based on the decrease in market value otherwise caused by the construction where, as here, the tracts involved are deeper than an acre.
*635 For these reasons the severance damages are to be based on the value of $2000.00 per front acre as residential homesites rather than $5000.00 per front acre as commercial sites. However, in order to more accurately compute the severance damages, it is necessary to reduce the per acre frontage and per acre cost to footage figures. Tract 1-8, belonging to the Champagnes, measures nine hundred twenty feet front on the new highway (Survey Stations 2 + 50 to 11 + 70). Tract 1-7, belonging to Ellender, measures four hundred sixty-four feet front on the new highway (Survey Stations 11 + 70 to 16 + 34). The cost to install proper driveway culverts for residential use is $9.58 per foot ($2000.00 - 208.71' = $9.58). There is some evidence that at least one culvert was placed by the State in front of each of these tracts. Accordingly, the Champagnes are entitled to recover as severance damages the sum of $8813.60 (920' × $9.58 = $8813.60) less a credit to the State for each culvert placed there by it to the extent of $2000.00. Ellender is entitled to recover as severance damages the sum of $4445.12 (464' × $9.58 = $4445.12) less a similar credit to the State for each culvert placed there by it of $2000.00. The trial judge, on remand, may receive evidence as to the number and positions of such culverts and assess severance damages accordingly.

CROP LOSSES ON PART TAKEN
At the time of the taking the Champagne property was under an agricultural lease to Ellender in which the latter was to pay to the Champagnes "1/6Th of the proceeds from all cane grown and delivered at factory value." The trial judge found that these crop losses amounted to $22,779.50 and prorated this loss among the parties on the basis of the lease provision, namely: $3796.58 to the Champagnes and $18,982.92 to Ellender. These awards are not contested by the State.

CROP LOSSES ON PART NOT TAKEN
During the course of construction in 1974, the drainage was impaired causing certain portions of the remainder of the Champagne property to flood, which resulted in a diminution of the crop yield for that year. The defendants (Ellender and Champagne) in the Champagne suit, by answer and reconventional demand, put at issue their claim for this loss in the proportions of 1/6Th and 5/6ths thereof.
During the trial on the merits the State objected to the offering of any evidence by the defendants in support of this claim. The trial judge sustained the objection and the evidence was admitted by proffer. C.C.P. Art. 1636. However, the court, in its written reasons for judgment, reversed itself, admitted the evidence, and awarded the defendants the sum of $18,899.17, in the amounts of $3149.86 (1/6Th) to the Champagnes and $15,749.31 (5/6ths) to Ellender. The trial judge based its authority to do so on the ruling in Reymond v. State Through Department of Highways, 255 La. 425, 231 So.2d 375 (1970). In so holding, the trial judge erred.
It has long been the settled jurisprudence of this state that in expropriation proceedings for highway construction, the sole issues before the court are the value of the part taken and severance damages to the remainder. Louisiana Highway Commission v. Dunn, 173 La. 998, 139 So. 324 (1932); Louisiana Highway Commission v. DeBouchel, 174 La. 968, 142 So. 142 (1932); State, Department of Highways v. Mouledous, 199 So.2d 185 (La.App. 3d Cir. 1967), writ refused June 20, 1967; State, Through Dep't of Highways v. A. Wilbert's Sons Lbr., 346 So.2d 842 (La.App. 1st Cir. 1977), writ denied 349 So.2d 1271 (La.1977)[5]; State Through Dep't of Highways v. Smith, 353 So.2d 322 (La.App. 1st Cir. 1977), writ granted 354 So.2d 1051 (La.1978).[6]
*636 The claim of the defendants for this particular crop damage is clearly one in tort. While we concede that in the interest of judicial economy certain claims, including the one now asserted, could very well be litigated and disposed of during the expropriation hearing,[7] the decision to do so now rests with the Supreme Court of this state as that court alone has the authority to reverse the above cited cases. It is not within this court's or the district court's province to do so.
Reymond v. State Through Dep't of Highways, above, relied upon by the trial judge, is inapposite in that it was not an expropriation proceeding.
For these reasons, the award of the trial court in the amounts of $3149.86 to the Champagnes and $15,749.31 to Ellender is reversed and set aside, reserving unto these parties such rights as they may have possessed when these claims were initially asserted.

REMAINING DAMAGES
As noted above, the trial judge awarded the defendants in the Champagne suit damages in the amounts of $2000.00 for relocating field roads, $4456.08 for dismantling and rebuilding loading ramps, and $500.00 for the dismantling of a cane derrick.
The State contends that these awards were for the benefit of the lessee and contrary to the authority that in expropriation proceedings any claim for damages by the lessee must be secured from the "lease advantage." C.C. Art. 2697;[8] State, Through Dep't of Highways v. Menefee, 266 So.2d 226 (La.App. 2d Cir. 1972), writ refused 267 So.2d 212 (La.1972); and State, Dep't of Highways v. Holmes, 253 La. 1099, 221 So.2d 811 (1969). Cf. In Re Morgan R. R. & S. S. Co., 32 La.Ann. 371 (1880).
The general rule that a lessee is limited to rights secured by the lease advantage is bottomed on the theory that lease rights are personal and not real rights. When the property leased is expropriated, the lease is terminated and absent a contractual agreement to the contrary the lessee has no claim for damages against the lessor. C.C. art. 2697. The lessee has, however, certain claims against the condemnor. His share of the expropriation price is measured by the market value of the lease minus the rent owed by the lessee for the remainder of the lease. 24 La.L.Rev. 849, 873-875. The lessee may also have the right to remove any improvements placed on the premises by him and, if so, he is entitled to the value of those improvements less the cost of removal. The above are just two examples of "lease advantage."
However, in the instant case, we are not concerned with a lease advantage and it is for this reason that the above authorities are factually inapposite. The fact that the lessors and lessee have agreed among themselves on a division of these damages is of no comfort to the State. The question is whether the lessors-owners have a claim for these damages. If they have, then the State is accountable. Quantum is not an issue.
The State also contends that the costs of relocation of the field roads, loading ramps, and cane derrick are business losses and as such are not compensable under then existing law, that is, the 1921 Constitution and Act 107 of 1954. We disagree.
*637 At the outset it must be noted that the roads, ramps and derrick (which the defendants replaced) were located within the highway roadway expropriated by the State. The values of these items were not included as improvements in the appraisals made either by the State's or the defendants' experts.
We recognize the general rule is that the measurement of compensation in expropriation proceedings is market value.
Art. 1, § 2 of the Louisiana Constitution of 1921 provided:
"* * * Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."
C.C. art. 2633 and R.S. 19:9 (prior to the amendment in 1974) provide:
"In estimating the value of the property to be expropriated, the basis of assessment shall be the true value which the land possessed before the contemplated improvement was proposed, and without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work."
And R.S. 48:218 provides:
"In expropriating lands for rights of way, if any improvement of the landowner or any crops upon the land are damaged or destroyed by the location of the right of way, the owner may recover compensation, in addition to the compensation for the property or the right of way, for the actual injury to or destruction of the improvement or crop."
As we appreciate the above law and the general rule that an owner is entitled to receive the fair market value for his property, the latter term includes improvements. Thus, where the appraisal does not include improvements the landowner has the right to show their value.
The issue here is clouded because the claims were sought as replacement costs and wrongly characterized as damages to the remainder rather than as compensation for the value of existing improvements included in the taking. The question then is whether the evidence adduced as to the cost of replacement satisfies the defendants' burden of proving the value of the improvements actually taken. We hold that it does. There is not the slightest contention that the defendants' positions are enhanced or that they received new items for old. Actually, they are in the same position now as they were before, no better and no worse.
For the above reasons, the judgment of the district court designating the amount of acreage taken is reversed and set aside and this matter is remanded for the purpose of permitting the parties to establish with certainty the extent and dimensions of the servitude to the end that proper legal descriptions can be ascertained for the part taken in fee simple and the order of expropriation be amended accordingly.
It is further ordered that value of the part taken and compensation for the lands contained within the servitude acquired by the State under the St. Julien doctrine insofar as the Champagne properties are concerned be fixed at $6915.24 per acre.
It is further ordered that the award to the Champagnes for severance damages in the sum of $41,500.00 be and the same is hereby amended to reduce the same to $8813.60, less a credit of $2000.00 for each culvert placed by the State for Tract 1-8.
The awards of $3796.58 to the Champagnes and $18,982.92 to Ellender for crop losses on the part taken are affirmed.
The awards of $2000.00, $4456.08 and $500.00 to the Champagnes for the loss of field road, loading ramps, and cane derrick, respectively, are affirmed.
The awards of $3149.86 to the Champagnes and $15,749.31 to Ellender for crop losses on part not taken are reversed and set aside, reserving unto these parties such rights as they may have possessed when these claims were initially asserted.
In all other respects the judgment is affirmed. Assessment of costs is to await a final judgment.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[1] Should have been $163,794.75.
[2] The doctrine seems to have been statutorily resurrected by R.S. 19:14. as amended by Act 504 of 1976.
[3] With respect to the land situated within the servitude, the issue was not raised as to the date its value should be determined for the purpose of compensation. See, A. K. Roy, Inc. v. Board of Com'rs for Pontchartrain L.D., 238 La. 926, 117 So.2d 60 (1960); Cruell v. Jefferson Parish, 216 So.2d 604 (La.App. 4th Cir. 1968), and Koerber v. City of New Orleans, 228 La. 903, 84 So.2d 454 (1955).
[4] "[W]here the evidence shows that the front portion of the tract taken has a higher value than the rear portion not taken, the landowner must be awarded the higher value for the land actually taken rather than an average value based on its proportionate portion of the land-area of the parent tract." State, Through Dep't of Highways v. Hoyt, 284 So.2d 763, 765 (La.1973).
[5] Two justices were of the opinion that the writ should have been granted to consider the landowner's claim for damages "suffered by reason of the contractor's failure to timely construct fences surrounding the highway right of way."
[6] The writ was recalled and the case remanded to the district court on joint motion of the parties.
[7] Considering the dissents in State, Through Dep't of Highways v. A. Wilbert's Sons Lbr., 349 So.2d 1271 (La.1977) and the granting of writs in State, Through Dep't of Highways v. Smith, 354 So.2d 1051 (La.1978), one can fairly surmise that the Supreme Court may wish to consider its previous rulings on this issue. If so, it would behoove the State in similar situations in the future to object to the claim by way of an exception of no cause of action in the early stages of the proceedings so that in the event of an adverse ruling proper third party demands could be made against the contractor or other parties deemed to have caused the tort.
[8] Art. 2697. If, during the lease, the thing be totally destroyed by an unforseen event, or it be taken for a purpose of public utility, the lease is at an end. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim of damages.