477 So.2d 115 (1985)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT
v.
Remy CHAISSON, et ux.
No. 84 CA 0698.
Court of Appeal of Louisiana, First Circuit.
July 10, 1985.
Rehearing Denied September 11, 1985.
*116 Bryan Miller, Sr. Asst. Gen. Counsel, Baton Rouge, for plaintiff-appellant State of La., Dept. of Transp. and Development.
Johnny X. Allemand, Thibodaux, for defendant-appellee Remy Chiasson, et ux.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SAVOIE, Judge.
The State of Louisiana, through the Department of Transportation and Development (State) expropriated under the "Quick-Taking" statute, LSA-R.S. 48:441, et seq., a piece of property belonging to Remy Chaisson and Patsy Kirkwood Chaisson, (landowners) in Lafourche Parish.
The trial court granted judgment in favor of the landowners, awarding them severance damages. The State appeals that judgment. We affirm.

FACTS
The landowners own a tract of land comprising approximately 29 acres that is bordered on the south by Louisiana Highway 304, which runs east-west, and on the west by Bayou Onion, which runs north-south, in Lafourche Parish. The tract is comprised of three parts: (1) the 1.5 acre home site, (2) 11-acres behind the residence and (3) the remainder which is primarily swamp. Although the 11-acre portion is not contiguous to any roads, the parties agree that its "highest and best use" is as a residential subdivision development.
In October of 1979, the State expropriated a roughly triangular .064-acre portion of the home tract's frontage on Highway 304 in order to widen and improve the highway bridge crossing Bayou Onion at that point. The landowners received $7,245.00 for the land taken, and have not appealed this amount. However, the landowners also claimed severance damages to the home tract as a result of the taking. The trial court awarded the landowners $47,200.00 in severance damages, and the State appealed.
The landowners' claim for severance damages is based upon alleged loss of access to the 11-acre tract and resulting loss of market value of the home. Remy Chaisson testified that at the time of the taking on October 11, 1979, he planned to develop the 11-acre tract into a subdivision, requiring construction of an access road from Highway 304 to the 11-acre tract through the side of the home tract and adjacent to Bayou Onion.[1] However, the State's construction plans for the bridge call for a 50-foot guardrail on the north side of Highway 304, extending from the Bayou in an easterly direction. The landowners argue *117 that because of this guardrail, and because of allegedly applicable road construction laws, the least obtrusive access road that could be built after the taking would curve through the western portion of the landowners' front yard. The right-of-way would pass within 14 feet of the home itself and cause severance damages to the home tract.
After trial on the merits, the trial court awarded the landowners $47,200.00 in severance damages, $10,000.00 in attorney fees, $339.50 in costs and $2,625.00 in expert witness fees. The State appeals from that judgment.

ON APPEAL
The State's appeal asserts five assignments of error dealing with the issues of the landowners' intent to build the access road, their burden of proof, and proper method of determination of damages. For the sake of clarity we will confine our discussion to these issues rather than the assignments.
Property cannot be "taken or damaged" by the State or its political subdivision except for public purposes and with "just compensation" paid to the owner or into the court for his benefit. La. Const. 1974, Art. 1, § 4. In every expropriation, the owner must be compensated to the "full extent of his loss." La. Const. 1974, Art. 1, § 4; State, Department of Highways v. Bitterwolf, 415 So.2d 196 (La. 1982). Thus, our constitution does not simply require that the owner of condemned property be compensated with a market value of the property taken and severance damages to his remainder, but that he be "placed in as good a position pecuniarily as he enjoyed prior the taking." State, Department of Highways v. Constant, 369 So.2d 699 (La.1979); State, Department of Transportation and Development v. Estate of Clark, 432 So.2d 405 (La.App. 1st Cir.1983).
The State contends that the trial court erred in its award of severance damages to the landowners. First, the State argues that the value of the residence was not diminished by the taking; and alternatively, that the landowners did not carry their burden of proof in establishing the amount of damages.
Severance damages may be awarded in expropriation cases when appropriate or properly proven. The term "severance damages" describes those compensable damages which flow from the partial expropriation of a tract of land, i.e., the difference between the value of the remaining property before and after the taking. (citations omitted) Missouri Pacific Railroad Company v. Nicholson, 460 So.2d 615, 624 (La.App. 1st Cir.1984), writs denied, 462 So.2d 185, 186 (La.1985).
The landowner has the burden of proving severance damages with legal certainty by a preponderance of the evidence. The informed and reasoned opinion of an expert, corroborated by facts in the record, may sufficiently prove a severance damage loss, particularly where it is accepted by the trier of fact. State, Department of Transportation and Development v. Bethley, 449 So.2d 102, 104 (La.App. 1st Cir. 1984). The issue as to whether property remaining to a condemnee has suffered severance damage is essentially a question of fact. Estate of Clark, supra at 410. Thus, the trier of fact's factual findings as to severance damages and his evaluation of, and the weight he gives to, the testimony of expert witnesses will not be disturbed on review absent a showing of manifest error. Bethley, supra.
The trial judge in written reason for judgment stated, and we agree, as follows:
It appears obvious that the taking has resulted in limiting defendants' options for locating the required access road.
Although the property is in an unzoned area, its development for subdivision purposes is regulated by ordinance and regulations of the parish planning commission. One such regulation requires that a subdivision access street shall intersect as nearly as possible at a 90° angle with an existing highway, extending 100 feet *118 before curving. A variance of up to 75° may be acceptable depending upon various factors including the extent to which a motorist's vision would be obscured.
Mr. George Bergeron, a civil engineer and surveyor who has worked extensively in Lafourche Parish testified that the location of the bridge and various signs would create an obstruction which would preclude much variation from the required 90° intersection. He was of the opinion based upon his experience in laying out subdivisions, that the parish governing authority would hold plaintiffs in this case to the 90° requirement.[[2]]
The road so constructed would be situated approximately fourteen (14) feet from the Chaisson residence and would necessarily alter its character as an isolated country estate. (footnote omitted)
The state contends, however, that laying out a road in such close proximity to the residence would not diminish its value. The Court disagrees. Mr. Lenno Powell, a local real estate broker and subdivision developer testified that a roadway situated as shown on the Bergeron plat (D-7) would cause the residence to lose much of its aesthetic appeal. The residence would no longer be a secluded, private, large country estate.
Mr. Powell noted that most people attracted to the general area desire and value its "country" flavor. He testified that a subdivision access artery located as shown on D-7 would virtually destroy the privacy of the residence, generate more noise, lessen security and severely diminish its appeal. In his opinion such a road would do "serious" harm to the value of the residence whereas a street more adjacent to Bayou Onion (where it could have been located prior to the taking) would not adversely affect its value.
In Mr. Powell's opinion, the residence itself had a value of $118,000.00 immediately before the taking; its value with the road as constructed in D-7 would be $70,800.00, thus diminishing its value by $47,200.00.
Mr. Honore Bourgeois, a real estate broker and appraiser who is also very familiar with property values in this parish supported Mr. Powell's testimony and cited essentially the same reasons. In his opinion, the residency immediately prior to the taking was $114,994.00, with the road as indicated on D-7, its value would be $73,000.00, for a diminution of value of $41,994.00.
The state relied upon the testimony of Mr. L.J. Roy and Mr. Richard C. Menzie.
Mr. Roy, considering that the access road would be situated as shown on D-7, estimated that severance damages of $2,428.00 would be sustained. Mr. Menzie estimated additional damages to be $2,434.00. These figures represent additional costs and damages to out buildings and trees which would result from laying out the road as shown on the Bergeron plat.
Incredibly, neither expert was of the opinion that a roadway fourteen feet from the Chiasson residence would diminish its value. Although admitting that "proximity damage" is possible, both thought the roadway would have no effect whatsoever on the value of the residence.
The state's witnesses relied largely upon a study they conducted which reveals several residences with roadways in close proximity. They contend these examples prove that a buyer would not be concerned about a roadway in close proximity to his residence.

*119 The Court does not doubt that photographs of residences in this parish adjacent to trash dumps, waste disposal pits or wrecked automobile lots could also be produced. This certainly would not prove that such nuisances do not diminish the value of adjoining property for residential use.
The Chiassons do not contend their residence would be uninhabitable or unmarketable, but only that its value would be reduced. They do not dispute that someone, somewhere, would be willing to buy it at some price.
Further, none of the examples relied upon are of the same character as defendants' estate and, more importantly, the study does not prove or tend to prove that the value of the subject housesas opposed to their general marketability is not adversely affected by roadway proximity.
The Court gives great weight to the testimony of Mr. Powell and Mr. Bourgeois in part because of their day-to-day familarity with the real estate market in northern Lafourche Parish. Further, their testimony seems eminently more reasonable; it is simply inconceivable that a road as shown on D-7 would not adversely affect the value of this particular residence.
The Court concludes, therefore that as a result of the taking, defendants are faced with a Hobson's choice; either they must forego development of the rear of their property or, in developing it, diminish the value of their residence. They were placed in this economic dilemma by the taking; it is a genuine loss for which they are entitled to compensation.
Because the funds previously deposited represented only the value of property actually taken and did not include any sum for severance damages, defendants are entitled to judgment of $47,200.00.[[3]]
Thus, the trial court concluded that there was sufficient proof of a severance damage loss. We find no error in the trial court's findings of fact and although the amount of the award may have been generous we find no manifest error or abuse of discretion.
For the foregoing reasons the judgment of the trial court is affirmed. The DOTD is assessed with costs in the amount of $608.00.
AFFIRMED.
SHORTESS, J., dissents and assigns reasons.
SHORTESS, Judge, dissenting.
I respectfully disagree with the majority opinion which adopts the trial court's reasons for judgment.
I believe the trial judge erred in accepting the landowners' appraisals which did not consider an access road as part of the pre-taking condition of the property. The taking did not necessitate construction of such a road; the landowners may perform this wholly discretionary act in the future in order to develop the 11-acre tract. The taking only frustrated those plans to the extent that it required a different routing for an access road. Since the alleged need to re-route the road to within 14 feet of the home was the damage caused by the taking, the trial court should have determined the difference between (a) the fair market value of the home tract with the least obtrusive access road that could have been built before the taking, and (b) the fair market value of the home tract with the least obtrusive access road that could have been built after the taking.
I also think that the trial court erred in failing to consider mitigation of damages. My examination of the record shows that the landowners might minimize their damages by simply foregoing development of the 11-acre tract. I would remand so the parties can establish the difference in market value of the 11-acre tract (a) with a highest and best use as a residential subdivision (requiring construction of an access road), and (b) with the highest and best use that requires no access road. If this market *120 value difference is smaller than the loss in market value of the home from the proximity of the road, then the conclusion to be reached is that the taking has only prevented the planned development of the 11 acres. The landowners' proper measure of damages will be the smaller loss in value of the 11 acres from having to devote it not to development, but rather to whatever highest and best use does not require an access road.
To allow recovery of the larger damage figure for loss in value of the home would be tantamount to allowing the landowners to take a discretionary action (building of the access road) and thereby augment the damage caused by the taking. This result is not condoned by the jurisprudence. See Columbia Gulf Transmission Co. v. Fontenot, 187 So.2d 455, 459 (La.App. 3rd Cir. 1966), writ ref., 249 La. 720, 190 So.2d 235 (1966); Dow v. Dept. of Highways, 179 So.2d 666, 668 (La.App. 2nd Cir.1965).
NOTES
[1] It was established at trial that there was insufficient room on the east side of the home to accommodate an access road.
[2] "Mr. Bergeron's testimony is corroborated by the testimony of Mr. Lenno Powell, a real estate appraiser, broker, subdivision developer and former member of the Lafourche Parish Planning Commission. Mr. Powell also contended that it is not likely that a variance to 75° would be granted in this case. The Court further notes that it is of no benefit to the State that another subdivision may have a 75° or lesser intersection. First, the ordinance and regulations at the time of the taking are the revelant criteria; Second, we cannot suppose that the planning commission will grant a variance to defendants as a matter of gracewe must assume it will require reasonable compliance with its regulations."
[3] "Mr. Powell's opinion is preferred by the [Trial] Court because of his greater experience."