498 So.2d 43 (1986)
EAST BATON ROUGE PARISH
v.
Florence Hobgood HAYS, et al.
No. 85 CA 0692.
Court of Appeal of Louisiana, First Circuit.
October 15, 1986.
Rehearing Denied December 10, 1986.
Writ Denied February 6, 1987.
*44 William T. Lowrey, Jr. Asst. Parish Atty., Baton Rouge, for plaintiff-appellee East Baton Rouge Parish.
Ashton L. Stewart, Baton Rouge, for defendants-appellants Florence Hobgood Hays, et al.
Before SAVOIE, CRAIN and JOHN S. COVINGTON, JJ.
SAVOIE, Judge.
The sole issue of this appeal is the trial court's denial of severance damages in an expropriation action.
Appellants[1] are the owners of a 234 acre tract of undeveloped property (hereinafter referred to as the Hobgood property) in East Baton Rouge Parish. The property is located across from Baton Rouge's Ryan airport, fronting 1400 feet on the east side of Plank Road by a depth of approximately 5000 feet. The property is severed by a 50 foot drainage canal which runs parallel to and 1,000 feet east of Plank Road, 34 acres lying between the canal and Plank Road, and 200 acres lying east of the canal.
On June 5, 1984, the Parish of East Baton Rouge, under the provisions of LSA-R.S. 19:102, filed an expropriation petition. The purpose of the expropriation was to widen the existing natural drain of 50 feet located on the Hobgood property, to a width of 130 feet in order to improve drainage. Although the petition sought full ownership of the expropriated strip of land, the parties entered into a stipulation prior to trial whereby the Parish would obtain only a drainage servitude for the stipulated price of $30,000.00, and appellants would not contest the taking. The only issue that remained was whether appellants were entitled to any severance damages, and accordingly, the matter was tried on that issue alone.
Following trial on that issue, the trial judge ruled in favor of the Parish, dismissing appellant's claim for severance damages as a result of the acquisition of the drainage servitude, thereby prompting this appeal.
Appellants contend they are entitled to severance damages in the nature of "cost to cure" as enunciated in State, Through Department of Highways v. Champagne, 371 So.2d 626 (La.App. 1st Cir.1979). Therein, the court in an expropriation action, was faced with a similar situation when property, prior to the taking, was severed by a small ditch which could be bridged by a twelve to eighteen inch culvert. However, following the expropriation, the ditch was increased to a width of thirty to forty feet across the top, and eight to thirteen feet at the bottom. In addressing the issue of whether severance damages were due, the court noted the following well established rules relating to severance damages:
A landowner is entitled to recover for damages to the remainder of his property which are occasioned by the taking. These damages are determined as of the date of the trial. R.S. 48:453; State, Through Dep't of Highways v. Romano, 343 So.2d 222 (La.App. 1st Cir.1977). They are ordinarily calculated as the difference between the value of the remaining property before and after the taking. State, Dep't of Highways v. Denham Springs Development Co., Inc., 307 So.2d 304 (La.1975); State, Through Dep't of Highways v. Hoyt, 284 So.2d 763 (La.1973). The burden of proving such damages rests with the landowner who must satisfy the same with legal certainty and a preponderance of the evidence. State, Through Dep't of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1961). The "cost to cure" appraisal method, except in a most unique situation, is not considered as a sound approach to the determination of severance damages as it may not truly reflect the before and after value of the remainder. State, Through Dep't of Highways v. *45 Mason, 254 La. 1035, 229 So.2d 89 (1969); State, Dep't of Highways v. Trippeer Realty Corp., 276 So.2d 315 (La.1973). There is authority, however, for the proposition that the "cost to cure" approach may be used where the damages to be derived are less than the decrease in the market value. State, Dep't of Highways v. Alexandria Volkswagen, Inc., 348 So.2d 176 (La.App.3d Cir.1977). 371 So.2d at 634
With these principles in mind, the question before the court was whether or not the facts of the case presented such a unique situation as to warrant application of the "cost to cure" appraisal method.
In holding that the "cost to cure" method was applicable, the court in Champagne gave the following reasons:
First, we are satisfied that the ditch presents a severe obstacle and virtually isolates these tracts from the highway, thereby rendering their division into one, two or three acre tracts for residential purposes impossible. Second, damages based on the "cost to cure" approach as utilized by Mr. Chauvin are less than damages based on the decrease in market value otherwise caused by the construction where, as here, the tracts involved are deeper than an acre.
In the case sub judice, both sides presented expert testimony at trial concerning the issues of highest and best use of the property, as well as existence of damages resulting from the taking. The experts were in agreement that the highest and best use of the 200 acre severed tract would be for the development of a residential subdivision. However, the dispute was over the question of whether the tract was damaged by the taking of an additional 80 feet for the drainage servitude.
On behalf of the Parish, Ross Shuffield, an expert in appraising property, testified that in his opinion there was no severance damage since the property was already severed at the time of the taking. He further testified that the existence of other available access routes aside from Plank Road, would allow the property to be developed as a residential subdivision. The opinion was concurred in by the remaining experts offered on behalf of the Parish.
Appellants in turn offered the testimony of Julius A. Bahlinger, III, who was accepted as an expert in the fields of appraisal, property management and development. Mr. Bahlinger testified that in order to develop a residential subdivision on this property, access to Plank Road was essential. He reasoned that while there did exist stub-out streets from other adjoining subdivisions, these streets would not be sufficient to handle the volume of traffic generated from a 600 lot subdivision as would be developed on a 200 acre tract. In his opinion, a subdivision that size would need an entrance or collector street to handle the flow of traffic and that any developer would connect this street to Plank Road.
Mr. Bahlinger further testified that in his opinion, absent access to Plank Road, the value of the property, developed as a subdivision, would be reduced at least $200.00 a lot or $120,000.00. This estimate was based upon the existence of the canal severing the property regardless of whether additional property was taken. In his opinion, the measure of damage to the property would be the "cost of curing" the problem, that is the cost of building a bridge to provide access to Plank Road.
Appellants also presented the testimony of Edward Evans who was accepted as an expert engineer in the design and construction of subdivisions. Mr. Evans agreed with the testimony of Mr. Bahlinger that access to Plank Road is necessary in order to develop this property into a subdivision. He testified that none of the existing stub-out streets would be sufficient to handle the traffic necessary to construct and handle a subdivision for a 200 acre tract nor would they provide sufficient access for residents, police, or fire officials. In his opinion the only way to properly subdivide the property would be to bridge the drainage *46 canal and provide access to Plank Road.
Mr. Evans calculated that prior to the taking, the cost to bridge the canal would be approximately $76,000.00. This was based upon the fact that the bridge in question would require four spans bank-to-bank. Following the taking, he testified the cost would be approximately $133,000.00 based upon the fact that seven spans would be required. Thus, the "cost to cure" the taking would be the difference between the cost of the bridges.
In holding that appellants were not entitled to severance damages, the trial court gave the following reasons:
The first determination I need to make is whether or not under the evidence presented in this case there was any market value diminution in the severed property as it should have been appraised under the law than it was before the servitude, before the taking. Mr. Bahlinger's testimony, I thought, was very much on point in many respects. Although he used the hypothetical subdivision approach, certainly his reasoning, his rationale would be the same whatever approach that he would use. And simply it was  and he stated that it was a guesstimate of two hundred dollars per lot that he considered to be the diminution because of the existence of the drainage ditch; that in this hypothetical subdivision the value would be two hundred dollars a lot less than it would be if that ditch did not exist. But he further testified that the two hundred dollar a lot figure that he was guesstimating existed prior to the taking and subsequent to the taking; that is, it existed, as opposed to if there would be no drainage ditch there, if it had been filled in all of the way it would be worth what it was worth. But as it is now, it would be worth two hundred dollars less and the servitude  the taking of the servitude didn't change that figure. His testimony, basically, is the primary testimony from that side upon which I have to rely but it's supported, certainly, by the defense  or the plaintiff, as it were, testimony, Mr. Shuffield, who used different considerations and he valued the property apparently as a parcel, as one big piece of property as opposed to a hypothetical subdivision. In his opinion there was no change in the market price before and after the taking. He testified that in his mind the property was valued at the same both before and after the taking.
The testimony that Mr. Evans offered primarily, in my mind, was testimony that dealt with the cost of cure approach. And if I were to  if I felt that I could get to that point, certainly his testimony would be given great weight in this case bcause I have a lot of respect for his opinion and he certainly has a great deal of experience.
But as a matter of law in this case I don't find any unique circumstances that would disallow the consideration of the market approach as favored by the courts consistently over the years. I don't find from the evidence that the defendants have carried the burden of proving that there is a diminution in the market value of the property taken after the taking, after the servitude. And finding that the evidence has not shown that, then there is no point in even going to the next step, finding out what the cost of cure is, because there are no damages; there are no severance damages.
We disagree. As this court stated in State of Louisiana, Department of Transportation and Development v. Chaisson, et ux, 477 So.2d 115 (La.App. 1st Cir.1985):
Property cannot be "taken or damaged" by the State or its political subdivision except for public purposes and with "just compensation" paid to the owner or into the court for his benefit. La. Const. 1974, Art. 1, § 4. In every expropriation, the owner must be compensated to the "full extent of his loss." La. Const.1974, *47 Art. 1, § 4; State, Department of Highways v. Bitterwolf, 415 So.2d 196 (La. 1982). Thus, our constitution does not simply require that the owner of condemned property be compensated with a market value of the property taken and severance damages to his remainder, but that he be "placed in as good a position pecuniarily as he enjoyed prior the taking." State, Department of Highways v. Constant, 369 So.2d 699 (La. 1979). (Emphasis ours).
While it is true that the property was severed and thereby damaged before the Parish expropriated additional property, we cannot ignore the fact that the action by the Parish substantially increased the severity of the severance and consequently the financial burden appellants faced in curing the problem. We feel that this is the very situation for which the "cost to cure" method was designed. Appellants are not requesting that the Parish pay the entire cost of bridging the canal, rather only that portion of the cost which is directly attributable to the additional taking by the Parish. After reviewing the record and exhibits in this matter, we feel that the facts of this case do indeed present a unique situation as referenced in Champagne, supra, and therefore, merit application of the "cost to cure" appraisal method.
In assessing the amount of damages due to appellants, we rely upon the figures presented by their own expert Edward Evans. Mr. Evans testified that prior to the taking the cost of the bridge would be $76,000.00 and that subsequently it would cost $133,000.00. Accordingly, we award severance damage in the amount of $57,000.00 together with judicial interest from date of demand.
For the above and foregoing reasons, the judgment of the trial court is reversed. Judgment is rendered in favor of defendants-appellants in the amount of $57,000.00 together with interest thereon from the date of demand until paid. Costs in the amount of $1,489.88 are to be born by plaintiff-appellee, East Baton Rouge Parish.
REVERSED AND RENDERED.
NOTES
[1] Appellants herein are Florence Hobgood Hays, John P. Hobgood, Edward C. Hobgood, Bill A. Hobgood, Jr., and Herbert W. Hobgood.