511 So.2d 1300 (1987)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
John C. BRAY, Defendant-Appellee.
Nos. 18911-CA, 18912-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1987.
Rehearing Denied September 17, 1987.
*1301 Norman L. Sisson, William W. Irwin, Jr., Edward A. Michel, Bernard L. Malone, Jr., Baton Rouge, for plaintiff-appellant.
Peatross, Greer & Hayter by Charles B. Peatross, Shreveport, for defendant-appellee.
Before MARVIN, SEXTON and LINDSAY, JJ.
MARVIN, Judge.
In consolidated actions filed in 1971 and in 1976 to expropriate property for the Buncombe Road I-20 and I-220 highway interchange, the State appeals a judgment which awarded the landowner $261,663 in addition to the amounts deposited for the takings ($36,297). LRS 48:441 et seq.
The landowner, by answer to the State's appeal, seeks to increase the expert witness fees awarded by the trial court. The State's five specifications of error relate to the value of the property taken and the legal manner of measuring and assessing severance damages to the remainder of the landowner's property.
We amend to reduce the award for severance damages from the 1971 taking and affirm the amended judgment.

FACTS
This plat shows what property was taken, when, and the relationship to the landowner's remaining property:
*1302 
On June 4, 1971, the State, through the Department of Highways, expropriated the 3.015 acres from the 6.85-acre tract, depositing $32,280 for that taking. The State did not deposit any amount for severance damages. On August 24, 1976, the State, through the Department of Transportation and Development, expropriated from the 3.84 acre remainder the .142 acres in full ownership for drainage purposes, and the .174 acre for a drainage servitude, depositing $4,107 for these takings to modify the interchange. DOTD did not deposit any amount for severance damages.
The landowner answered to challenge the State's evaluation of the property in each instance and sought severance damages and attorney and expert witness fees.

THE VALUE OF THE LAND TAKEN
A landowner is entitled to the market value of his property at the time of expropriation, considered in light of its highest and best use. Highest and best use is the most favorable employment to which the land is adaptable and to which the property may be reasonably put in the not too distant future. State, Department of Highways v. Rapier, 246 La. 150, 164 So.2d 280 (1964).
The landowner's appraisers, Robert Russell and Marshall Graham, found the highest and best use of the properties taken in 1971 and in 1976 to be commercial. Based on comparable sales they estimated the value of the 3.015 acres taken in 1971 to have been $26,136 per acre, or $78,800, and the value of the .316 total acreage taken in 1976 to have been $30,886 per acre, or $9,760. The State's appraisers, James McNew and Roy Fulco, used similar comparable sales but opined that the highest and best use of the properties taken to have been light industrial. The deposits made for the takings ($36,387) were based on earlier evaluations.
The trial court accepted the opinions of the landowner's appraisers as being the *1303 more reasonable and based its awards primarily on the testimony of the landowner's appraisers.
When experts disagree as to value, the trial court has wide discretion to determine the weight that will be given to expert testimony. The trial court's findings of fact will not be disturbed on appeal unless they are clearly erroneous. State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972); State, Dept. of Transp. & Dev. v. Stephenson, 480 So.2d 909 (La.App. 2d Cir.1985). The record supports the trial court's awards for the properties taken and we shall not disturb that part of the judgment which we find is not clearly erroneous.

SEVERANCE DAMAGES
Severance damage is any depreciation in market value of the remainder of a landowner's property caused by the taking. Such damages are recoverable and are ordinarily calculated as the difference between the value of the remaining property before and after the taking. State, Dept. of Hwys. v. Denham Springs Dev. Co., Inc., 307 So.2d 304 (La.1975); State, Through Department of Highways v. Hoyt, 284 So.2d 763 (La.1973).
The landowner's appraisers found that the 1971 taking caused severance damages by diminishing access to and visibility of the remainder. The landowner's appraisers agreed that the remaining property suffered a diminution in value of 35 percent. The State's appraiser, Fulco, found that no severance damage occurred as a result of the 1971 taking. The State's appraiser, McNew, found that some severance damage occurred. McNew again based his evaluation on his finding that the highest and best use of the property was light industrial and calculated severance damages from the 1971 taking to be $19,647.
The landowner's appraisers calculated severance damages based on land values immediately before and after the time of the taking in 1971 as well as on land values in 1984, the time of the trial. Applying the 35 percent severance damage factor to 1971 land value (the time of the taking), the landowner's experts found severance damages to total $35,000. Using 1984 property values (the time of trial), and again applying the 35 percent severance damage factor, the experts found severance damages in 1984 totaled $145,700.
The trial court again based its award for severance damages on the testimony of the landowner's appraisers. The trial court was not clearly wrong in finding the remainder of the landowner's property sustained a 35 percent reduction in value. The trial court was wrong in measuring the damages against 1984 (time of trial) land values.

WHEN ARE SEVERANCE DAMAGES MEASURED?
At the time of the first taking in 1971, LRS 48:453, adopted by Act 107 of 1954, provided as follows:
The market value is determined as in general expropriation suits but as of the time the estimated compensation was deposited in the registry of the court.
Damage to the remainder of the property is determined as of the date of the trial.

In either case, the defendant has the burden of proving his claim.
Relying on the statutory language, the trial court awarded severance damages on 1984 land values. The case law has consistently interpreted the quoted statute not literally, but to the effect that severance damages are calculated as the difference between the market value of the remaining property immediately before and after the taking. See State, Dept. of Hwys. v. William T. Burton Indus., Inc., 219 So.2d 837 (La.App. 3d Cir.1969), writ denied, and other cases discussed in Tate, Legal Criteria of Damages and Benefits, 31 La.L.R. 431 (1971). See also Denham Springs Development Co., supra; Hoyt, supra; State, Dept. of Hwys. v. Ross Continental Mot. L., Inc., 328 So.2d 883 (La. 1976); State, Department of Highways v. Wells, 308 So.2d 774 (La.1975); State, Department of Highways v. Tyler, 326 So.2d 349 (La.1976); State, Through Dept. of *1304 Highways v. Harris, 423 So.2d 721 (La. App. 1st Cir.1982). The case law interpretation apparently has been statutorily adopted by amendments to LRS 48:453 since 1974.
The cited cases uniformly indicate that former LRS 48:453 (severance damages are to be determined as of the date of trial) simply allowed the trial court to consider special benefits which result to the remainder of the property from the completed highway project, and has not been recognized authority for applying time of trial values to determine severance damages. See Tate, La.L.R., supra; Wells; Tyler; and Harris, cited supra. § 453 B, since 1974, has read:
The measure of damages, if any, to the defendant's remaining property is determined on a basis of immediately before and immediately after the taking, taking into consideration the effects of the completion of the project in the manner proposed or planned. (Emphasis supplied.)
Accordingly, we reduce the award for severance damages from the 1971 taking from $145,700 to $35,000, as calculated by the landowner's appraisers on 1971 values. The State does not contend that special benefits resulted from the project to reduce or offset the severance damage award.

THE 1976 TAKING
Two experts for the landowner testified that severance damages resulted from the 1976 taking of a total of .316 acres. Dr. Chester Watson, a civil engineer, specialist in hydrology, inspected the property, topographic maps, and the drainage plan of the State. He concluded that as a result of the project, the amount of water flowing onto defendant's property increased to three times the amount which flowed on the property before the 1976 construction began. Watson explained that prior to the 1976 construction, water drained on the property from 16 acres, whereas afterwards water drained on the property from 49 acres. Two 36-inch pipes are discharging water directly onto the property. Before the 1976 taking, one 24" pipe discharged water onto the property.
Desi Sprawls, the landowner's civil engineer and land surveyor, estimated the cost to alleviate the increased drainage problem. Sprawls agreed with the hydrologist's findings and conclusions. Sprawls recommended that a 4' × 3' concrete ditch be built to divert the water away from and around the property. Sprawls stated the proposed ditch could not have been built before 1982, when the project was completed and the existing drainage structures were placed by the State. Sprawls estimated that the cost of such a ditch in 1984 would have been $68,500 and that the cost would have been $52,800 in 1976. He further stated that before the 1976 modification of the interchange, an earthen ditch could have solved the lesser drainage problem (from the 16 acres) at a cost of $4,000 in 1984, and $2,600 in 1976.
The landowner's appraisers, Russell and Graham, also found severance damage resulted from the 1976 taking and used Sprawls' cost estimates to calculate the total damage. State appraisers, McNew and Fulco, opined that no severance damage resulted from the 1976 taking.
The trial court agreed with the conclusions of the landowner's experts that the most economically feasible method of solving the problem was by the construction of the concrete ditch. The trial court awarded $64,500, the cost of the ditch ($68,500), less what an earthen ditch would have cost ($4,000).
The State argues that the trial court erred in using a "cost to cure" approach rather than a market data sales comparison approach and in awarding "cost to cure" damages based on the cost of the ditch in 1984, rather than in 1976 at the time of the taking.
We note that there is no exclusive or artificial formula by which severance damages may be determined, but the awards must be reasonable and must be related to adduced testimony and documentary evidence. Louisiana Power & Light Co. v. Churchill Farms, Inc., 292 So.2d 183 (La.1974); State, Etc. v. Lutcher & *1305 Moore Cypress, Etc., 462 So.2d 215 (La. App. 5th Cir.1984), writ denied. In State, Dept. of Highways v. Nisbet Properties, Inc., 309 So.2d 398 (La.App. 2d Cir.1975), we approved the use of the "cost to cure" approach in certain instances, stating as follows:
While both cases express disapproval of cost to cure as a primary approach to measuring damages, neither case prohibits the use of this approach in cases where other methods such as market data are not available or are impractical and where the approach is used as a tool in determining before and after market value. Nisbet Properties, Inc. at p. 400.
The "cost to cure" approach has also been held to be a proper measure of severance damages when it places the landowner in as good a position as he enjoyed prior to the taking, and is less than the decrease in market value otherwise caused. State, Through Dept. of Highways v. Champagne, 371 So.2d 626 (La.App. 1st Cir. 1979); St., Through Dept. of Hwys. v. Alexandria, Etc., 348 So.2d 176 (La.App. 3d Cir.1977); East Baton Rouge Parish v. Hays, 498 So.2d 43 (La.App. 1st Cir.1986), writ denied.
The landowner's appraisers testified that they based their calculation of severance damages on the "cost to cure" estimates provided by Sprawls and that this approach was the most reasonable and economical method of solving the drainage problem. Both experts stated that had the "cost to cure" estimates not have been used, they would have adjusted or decreased the value of the remaining property by 20 percent because of the drainage negative across more than 13 acres owned by the landowner, and that this "adjustment" would result in severance damages to the 13 plus acres that were much higher than the "cost to cure" approach.
The trial court was not clearly wrong in awarding damages on a "cost to cure" approach under the circumstances of this record. The evidence indicates that this was the most accurate, practical and economical method to compensate the landowner for the full extent of his loss as the constitution requires. LSA-Const. Art. 1, § 24. The State asserts that the trial court should have estimated the cost of the ditch using 1976 prices, rather than using the cost in 1984. We again emphasize the provision of the amended statute relating to severance damage, LRS 48:453 B:
The measure of damages, if any, to the defendant's remaining property is determined on a basis of immediately before and immediately after the taking, taking into consideration the effects of the completion of the project in the manner proposed or planned.
We cannot agree with the State that the trial court erred in awarding the cost of the ditch in 1984. The evidence supports the conclusion that it would not have been feasible, practically or economically, to construct the ditch until the project was completed in 1982. In East Baton Rouge Parish v. Hays, supra, the appellate court awarded severance damages based on the difference between the estimated cost of building a bridge before the taking and after completion of the project. The cost to cure at any given time was less than the severance damage to the remainder had the cure not been undertaken. Under these circumstances we cannot find the trial court was clearly wrong in allowing $64,500 for the cost of the concrete ditch that was estimated to be $68,500. That part of the judgment accomplishes the constitutional mandate to compensate the landowner to the full extent of his loss and does not unjustly enrich the landowner.

EXPERT WITNESS FEES
The landowner seeks to increase the fees awarded to the amounts charged by Watson and Sprawls for their work and expert testimony. Dr. Watson charged the landowner $4,383 and Mr. Sprawls charged him $3,050. They were awarded, respectively, $3,500 and $2,000. The trial court has much discretion in setting a reasonable expert witness fee and is not bound by what an expert charges his client. Northwest Ins. Co. v. Borg-Warner Corp., 501 So.2d 1063 (La.App. 2d Cir. *1306 1987). See also State, Dept. of Hwys. v. William T. Burton Indus., Inc., supra; State, Dept. of Transp. v. Shannon-Page Inv., 478 So.2d 702 (La.App. 3d Cir.1985). We find no abuse of discretion by the trial court in this respect.

DECREE
The judgment is amended to reduce the amount awarded for severance damages as a result of the 1971 taking from $145,700 to $35,000 and in all other respects is affirmed. Costs of the appeal are assessed one-half to the State and one-half to the landowner.

AMENDED AND AFFIRMED.

ON APPLICATION FOR REHEARING
Before NORRIS, MARVIN, LINDSAY, SEXTON and JASPER E. JONES, JJ.
Rehearing denied.